No. 25-1933

# United States Court of Appeals for the Federal Circuit

WSOU INVESTMENTS LLC, dba Brazos Licensing and Development,

*Plaintiff-Appellant,*

*v.*

GOOGLE LLC,

*Defendant-Appellee.*

Appeal from the U.S. District Court for the Western District of Texas in No. 6:20-cv-00572-ADA, District Judge Alan D. Albright

**BRIEF OF DEFENDANT-APPELLEE GOOGLE LLC**

Tharan Gregory Lanier
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
(650) 739-3941

John R. Boulé III
JONES DAY
555 South Flower Street
50th Floor
Los Angeles, CA 90071
(213) 489-3939

I. Sasha Mayergoyz
Sachin M. Patel
JONES DAY
110 North Wacker Drive
Suite 4800
Chicago, IL 60606
(312) 269-1572

Jennifer L. Swize
Tracy A. Stitt
Edwin O. Garcia
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939

*Counsel for Google LLC*

This appeal concerns claim 3, which depends from claim 1, of U.S. Patent No. 8,041,806.

Claim 1:

A system comprising:

a behavioral information collector operable to monitor communication traffic exchanged with a communication network subscriber over an access communication link, the access communication link enabling the subscriber to access electronic content, the behavioral information collector being configurable to collect from any of a plurality of types of communication traffic in the monitored communication traffic behavioral information indicative of behavior of the subscriber in using the access communication link;

a behavioral analyzer operatively coupled to the behavioral information collector and operable to maintain a behavioral profile of the subscriber that reflects ongoing behavior of the subscriber, based on behavioral information collected from only one or more particular types of the plurality of types of communication traffic in the monitored communication traffic, maintenance of the behavioral profile being unaffected by behavioral information collected from types of communication traffic other than the one or more particular types of communication traffic; and

an electronic content delivery controller operatively coupled to the behavioral analyzer and operable to control, based on the behavioral profile, delivery of targeted electronic content to the subscriber for presentation with electronic content accessed by the subscriber,

wherein at least one of the behavioral information collector, the behavioral analyzer, and the electronic content delivery controller is implemented using hardware,

wherein the access communication link comprises a network link in an access network, the access network comprising an electronic content source that is operable to deliver the accessed electronic content to the subscriber,

wherein the electronic content source provides an Internet Protocol Television (IPTV) service, and

wherein the electronic content delivery controller is further operable to select the targeted electronic content from targeted electronic content provided by multiple targeted electronic content providers.

Claim 3:

The system of claim 1, wherein the monitored communication traffic comprises packet traffic, the system further comprising:

a Deep Packet Inspection (DPI) module operatively coupled to the behavioral information collector and operable to monitor the access communication traffic.

# CERTIFICATE OF INTEREST

Case No. 2025-1933

*WSOU Investments LLC v. Google LLC*

Filing Party/Entity: WSOU Investments LLC

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: February 23, 2026 Signature: */s/ John R. Boulé III*

Name: John R. Boulé III

**1. Represented Entities** (Fed. Cir. R. 47.4(a)(1)) – Provide the full names of all entities represented by undersigned counsel in this case.

Google LLC

**2. Real Party in Interest** (Fed. Cir. R. 47.4(a)(2)) – Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None/Not Applicable

**3. Parent Corporations and Stockholders** (Fed. Cir. R. 47.4(a)(3)) – Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

XXVI Holdings Inc.
Alphabet Inc.

**4. Legal Representatives** – List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

Jones Day
Rita J. Yoon
Michael A. Lavine
Walter A. Mostowy
Daniele San Román
Marlee R. Hartenstein
Sanjiv P. Laud

Warren Kash Warren LLP (formerly Warren Lex LLP)
Matthew Warren
Erika H. Warren
Jennifer A Kash
Francesca Miki Shima Germinario

Potter Minton
Michael E. Jones
Shaun William Hassett
Patrick C. Clutter

**5. Related Cases** – Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)? If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

No

**6. Organizational Victims and Bankruptcy Cases** – Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None/Not Applicable

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES ........ vi

TABLE OF ABBREVIATIONS ........ ix

STATEMENT OF RELATED CASES ........ x

INTRODUCTION ........ 1

STATEMENT OF THE ISSUES ........ 3

STATEMENT OF THE CASE ........ 3

A. The ’806 Patent ........ 3

1. Overview ........ 3

2. The claims ........ 4

3. The ’806 patent describes the claimed components in functional terms, implemented with conventional equipment ........ 5

B. District Court Proceedings ........ 7

C. The District Court’s Memorandum Opinion ........ 8

SUMMARY OF THE ARGUMENT ........ 12

STANDARD OF REVIEW ........ 15

ARGUMENT ........ 15

I. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT THAT THE CLAIMS OF THE ’806 PATENT ARE INVALID UNDER SECTION 101 ........ 15

A. The Claims Are Directed To Ineligible Subject Matter ........ 15

1. The character of the claims is directed to excluded subject matter ........ 16

a. The claim language demonstrates that the claims are directed to an abstract idea rather than a specific technical improvement ........ 16

b. The claims recite functional, result-oriented language without explaining how the results are achieved ........ 19

**TABLE OF CONTENTS**
(continued)

**Page**


2. The specification confirms that the claims are directed to the ineligible concept of delivering targeted content ..............21

3. This Court repeatedly holds that claims directed to delivering targeted content are patent ineligible ......................23

B. The District Court Properly Determined That The Claims Lack An Inventive Concept ..........................................................27

1. There is no genuine dispute that claim 1 lacks an inventive concept ......................................................28

2. There is no genuine dispute that claim 3 lacks an inventive concept ......................................................31

II. WSOU'S ARGUMENTS LACK MERIT .............................................34

A. WSOU's Appeal Is Limited to Claim 3 ...........................................34

B. WSOU's Appeal Hinges On A Nonexistent Claim Requirement .....34

1. The claims do not require the "behavioral information collector" to be remote from the subscriber ............................35

2. The specification refutes WSOU's argument that the "behavioral information collector" must be remote from the subscriber ......................................................................37

3. WSOU's remaining arguments are erroneous ..........................40

C. WSOU's *Alice* Step One Arguments Fail ..........................................41

1. The intrinsic evidence lacks any discussion of how the claimed system solves a technical problem or provides a specific technical improvement ..............................................41

2. Unable to distinguish this Court's precedent regarding targeted content, WSOU cites inapposite decisions ................44

D. WSOU's *Alice* Step Two Arguments Fail ........................................46

1. WSOU forfeited any argument that an ordered combination in claim 1 provides an inventive concept ...........47

2. WSOU's arguments regarding cookies fail to show an inventive concept ......................................................48

**TABLE OF CONTENTS**
(continued)

**Page**

3. WSOU's remaining arguments about the "behavioral information collector" also fail to show an inventive concept ....49

4. The district court correctly determined there is no genuine dispute that combining DPI and IPTV lacks an inventive concept ....51

CONCLUSION ....52

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
97 F.4th 1371 (Fed. Cir. 2024) ....................15, 28, 48

*Alice Corp. v. CLS Bank Int'l*,
573 U.S. 208 (2014)....................7, 27

*Am. Axle & Mfg. v. Neapco Holdings LLC*,
967 F.3d 1285 (Fed. Cir. 2020) ....................48

*Ancora Techs., Inc. v. HTC Am., Inc.*,
908 F.3d 1343 (Fed. Cir. 2018) ....................45

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) ....................46

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ....................32

*Beteiro, LLC v. DraftKings Inc.*,
104 F.4th 1350 (Fed. Cir. 2024) ....................2, 15, 20, 23

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
778 F. App'x 882 (Fed. Cir. 2019).................... 17, 18, 19, 22, 26, 30, 48, 49, 52

*Brit. Telecomms. PLC v. IAC/InterActiveCorp*,
813 F. App'x 584 (Fed. Cir. 2020)....................25

*Broadband iTV, Inc. v. Amazon.com, Inc.*,
113 F.4th 1359 (Fed. Cir. 2024) .................... 1, 12, 15, 17, 26, 27, 33, 44

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) ....................19, 28, 31

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014) .......................................................................18

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) ....................................................................21, 35

*Chewy, Inc. v. IBM Corp.*,
94 F.4th 1354 (Fed. Cir. 2024) ..................................... 12, 19, 26, 31, 33, 44, 50

*Coop. Ent., Inc. v. Kollective Tech., Inc.*,
50 F.4th 127 (Fed. Cir. 2022) ...........................................................................50

*Customedia Techs., LLC v. Dish Network Corp.*,
951 F.3d 1359 (Fed. Cir. 2020) ................................ 2, 12, 13, 16, 17, 24, 30, 51

*Data Engine Techs. LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018) ..........................................................................45

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014) .......................................................................45

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) .......................................................................23

*Free Stream Media Corp. v. Alphonso Inc.*,
996 F.3d 1355 (Fed. Cir. 2021) ...................................................................16, 24

*GoTV Streaming, LLC v. Netflix, Inc.*,
2026 WL 346200 (Fed. Cir. 2026) ...............................................................1, 14

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
60 F.4th 1349 (Fed. Cir. 2023) ....................................................................42, 43

*In re Morsa*,
809 F. App’x 913 (Fed. Cir. 2020).....................................................................25

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Intell. Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) ....................27

*Ironburg Inventions Ltd. v. Valve Corp.*,
64 F.4th 1274 (Fed. Cir. 2023) ....................52

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
942 F.3d 1143 (Fed. Cir. 2019) ....................45

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
474 F.3d 1323 (Fed. Cir. 2007) ....................36

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F.4th 1280 (Fed. Cir. 2024) ....................17, 21, 48

*Monsanto Co. v. Scruggs*,
459 F.3d 1328 (Fed. Cir. 2006) ....................52

*Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*,
318 F.3d 1143 (Fed. Cir. 2003) ....................38

*Regents of Univ. of Minn. v. AGA Med. Corp.*,
717 F.3d 929 (Fed. Cir. 2013) ....................50

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
930 F.3d 1295 (Fed. Cir. 2019) ....................45

*US Pat. No. 7,679,637 LLC v. Google LLC*,
164 F.4th 1373 (Fed. Cir. 2026) ....................15, 20

*Visual Memory LLC v. NVIDIA Corp.*,
867 F.3d 1253 (Fed. Cir. 2017) ....................43

*Yu v. Apple Inc.*,
1 F.4th 1040 (Fed. Cir. 2021) ....................40

# TABLE OF ABBREVIATIONS

***Parties***

| Abbreviation | Term |
|---|---|
| Google | Google LLC |
| WSOU or Brazos | WSOU Investments LLC, dba Brazos Licensing and Development |

***Terms***

| Abbreviation | Term |
|---|---|
| ’806 patent | U.S. Patent No. 8,041,806 (Appx65-78) |
| BBr. | Appellant WSOU Investments LLC’s Opening Brief, Dkt. 13 |
| DPI | Deep Packet Inspection |
| IPTV | Internet Protocol Television (service) |

**** All emphasis is added throughout, unless otherwise indicated.***

**** All internal case citations and quotations are omitted from citations, unless otherwise indicated.***

## STATEMENT OF RELATED CASES

This is the sole appeal from the case below. Counsel for Google is not aware of any other case pending in this or any other tribunal that will directly affect or be directly affected by this Court's decision in the pending case. *See* Fed. Cir. R. 47.5.

# INTRODUCTION

This Court should affirm the district court's grant of summary judgment that the claims are invalid under Section 101. The disputed claims cover a system for delivering targeted content (such as ads), thus fitting comfortably within this Court's extensive "'targeted advertising' precedent" holding that claims directed to targeted content are patent ineligible. *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1371 (Fed. Cir. 2024). Based on a fully developed record and after two separate hearings, the district court carefully and correctly applied this Court's precedent in a detailed decision. WSOU pins its entire appeal on a nonexistent claim limitation. That is contrary to this Court's instruction that "only features that are claimed, not unclaimed details that appear in the specification, can supply something beyond ineligible matter." *GoTV Streaming, LLC v. Netflix, Inc.*, 2026 WL 346200, at *5 (Fed. Cir. 2026).

The claims here bear the standard hallmarks of ineligible subject matter. Directed to the abstract concept of delivering targeted content, the claims use result-oriented functional language without explaining ***how*** the results are achieved. For example, the claims recite a "behavioral information collector"—a component that WSOU agrees is described in purely functional terms—that performs the generic function of "monitor[ing] communication traffic exchanged with a … subscriber." Appx76(16:3-5). Claims "drafted using largely (if not

entirely) result-focused functional language, containing no specificity about how the purported invention achieves those results … ***are almost always found to be ineligible*** for patenting under Section 101." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024). This case is no different.

The claim limitations—individually and as an ordered combination—fail to add anything "significantly more" to the abstract idea. The specification itself demonstrates the absence of any inventive concept in the technological realm, consistently teaching that the claimed "components are described herein ***primarily in terms of their functions***" and that skilled artisans could "implement the invention ***in any of various ways***" because "the present invention is ***not limited to any particular types*** of equipment, protocols, or operation." Appx72(7:3-8); Appx71(5:24-30). This confirms that the claims implement "the abstract concept of delivering targeted advertising using a computer only as a tool." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1363 (Fed. Cir. 2020).

Unable to defend the claims as written, WSOU's arguments seek to import an unwritten limitation. WSOU contends that the claimed "behavioral information collector" must be remote from the subscriber device. BBr.29-34. But nothing in the claim language requires this arrangement. And the specification directly refutes this argument by making clear that components—such as the "behavioral

information collector" and subscriber device—can be "implemented in the ***same equipment, such as on one computer or network device***." Appx71(6:17-25).

## STATEMENT OF THE ISSUES

Based on a fully developed record, did the district court correctly grant summary judgment of invalidity under Section 101 after: (i) applying multiple tests from this Court's precedent to hold that the claims are directed to the abstract idea of delivering targeted content; and (ii) determining there is no genuine dispute that the claims fail to add significantly more to that ineligible concept?

## STATEMENT OF THE CASE

### A. The '806 Patent

#### 1. Overview

The '806 patent is titled "Targeted Electronic Content Delivery Control Systems and Methods." Appx65. The Abstract states that "[t]argeted electronic content delivery control systems and methods are disclosed." Appx65. The patent explains that the claimed system relates to "control of electronic content delivery to subscribers in communication networks based on subscriber behaviors." Appx69(1:7-10).

The '806 patent alleges a need for "improved targeted electronic content delivery" to resolve an "advertising spend wastage problem" when content is "delivered to consumers without regard to their buying intent and/or personal

interests." Appx69(1:15-18; 2:32-33). The patent notes that "the present invention may significantly improve an advertiser's return of investment … by delivering highly relevant targeted online advertisements and/or other electronic content to end consumers." Appx69(2:36-42).

### 2. The claims

WSOU originally asserted claims 1-14 and ultimately pursued infringement of just claim 3, which depends from claim 1. Appx5724 n.1; *see* Appx944. Claim 1 recites:

> A system comprising:
>
> a behavioral information collector operable to monitor communication traffic exchanged with a communication network subscriber over an access communication link, the access communication link enabling the subscriber to access electronic content, the behavioral information collector being configurable to collect from any of a plurality of types of communication traffic in the monitored communication traffic behavioral information indicative of behavior of the subscriber in using the access communication link;
>
> a behavioral analyzer operatively coupled to the behavioral information collector and operable to maintain a behavioral profile of the subscriber that reflects ongoing behavior of the subscriber, based on behavioral information collected from only one or more particular types of the plurality of types of communication traffic in the monitored communication traffic, maintenance of the behavioral profile being unaffected by behavioral information collected from types of communication traffic other than the one or more particular types of communication traffic; and
>
> an electronic content delivery controller operatively coupled to the behavioral analyzer and operable to control, based on the behavioral profile, delivery of targeted electronic content to the subscriber for presentation with electronic content accessed by the subscriber,

> wherein at least one of the behavioral information collector, the behavioral analyzer, and the electronic content delivery controller is implemented using hardware,
>
> wherein the access communication link comprises a network link in an access network, the access network comprising an electronic content source that is operable to deliver the accessed electronic content to the subscriber,
>
> wherein the electronic content source provides an Internet Protocol Television (IPTV) service, and
>
> wherein the electronic content delivery controller is further operable to select the targeted electronic content from targeted electronic content provided by multiple targeted electronic content providers.

Appx76(16:2-42). Dependent claim 3 recites:

> The system of claim 1, wherein the monitored communication traffic comprises packet traffic, the system further comprising:
>
> a Deep Packet Inspection (DPI) module operatively coupled to the behavioral information collector and operable to monitor the access communication traffic.

Appx76(16:47-49).

#### 3. The '806 patent describes the claimed components in functional terms, implemented with conventional equipment

The '806 patent touts that the claimed components are "described herein primarily in terms of their functions" "[g]iven the broad range of possible implementations of many of the components of the system." Appx72(7:3-5). The patent explains that Figure 2 "represents one illustrative example of an embodiment of the invention" such that "components of the system and the interconnections between those components may be implemented in any of various

ways." Appx71(6:12-19). The components can be "implemented in the same equipment, such as on one computer or network device." Appx71(6:24-25).

Describing the "behavioral information collector" in purely functional language, the '806 patent states this component "monitor[s] all communication traffic flows of the subscriber" and "forward[s]" the collected information to a "behavioral analyzer." Appx72(8:14-17; 8:50-60). Rather than describe a specific implementation of the "behavioral information collector," the patent explains that, "[b]ased on the functional descriptions, a person skilled in the art would be enabled to implement the invention in any various ways." Appx72(7:6-8).

The '806 patent also instructs that skilled artisans "will be familiar with many different types of subscriber systems, access communication networks, and core communication networks." Appx70(4:62-67); Appx71(5:24-26) (same). As the patent emphasizes, "[s]ince the present invention is not limited to any particular types of equipment, protocols, or operation, subscriber and network equipment are described only to the extent necessary to illustrate embodiments of the invention." Appx71(5:26-30). For example, the patent notes that the DPI module recited in claim 3 was conventional: "A DPI module used in behavioral information collection … might be an existing module that is also used for such functions as traffic management." Appx71(6:39-42).

### B. District Court Proceedings

In June 2020, WSOU filed this lawsuit and fourteen others against Google. Appx79-114; Appx131-135. In this case, WSOU alleged infringement by Google's YouTube TV and Google TV offerings. Appx94-114; Appx923; Appx50-51.

In August 2021, after months of discovery, Google sought summary judgment that the claims of the '806 patent were invalid under Section 101 under the two-step framework in *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014). Appx630-658. Google established the claims were: (i) directed to "collecting information, analyzing that information, and delivering targeted content," Appx637; and (ii) failed to recite an inventive concept, Appx649-656. WSOU opposed, Appx747-769, and Google replied, Appx802-819.

In July 2022, WSOU filed a summary-judgment motion that claim 3 was patent eligible. Appx5720-5740. Google opposed, Appx6166-6192, and WSOU replied, Appx6196-6208.

On February 16, 2023, the district court heard argument on the parties' motions. Appx7169-7208(3:20-40:16). The district court granted Google's motion for all claims, except for claim 3. Appx7208-7209(40:18-41:15). The court stated that claim 3's patent eligibility would be resolved at trial "with respect to the second *[Alice]* question." Appx7209(41:13-15).

In June 2023, having completed fact and expert discovery, Google moved for reconsideration of summary judgment that claim 3 was patent ineligible. Appx7249-7328. With a record including expert testimony and prior art, Google argued that claim 3 recited "known" and "common components" to implement an abstract idea. Appx7261-7269. WSOU opposed, Appx7340-7355, and Google replied, Appx7383-7417.

On November 13, 2023, the district court heard argument on Google's motion for reconsideration, and orally granted the motion. Appx8373-8386(4:3-17:24).

On September 12, 2024, the parties requested the district court's guidance on the issuance of final judgment. Appx8987-8988. In that request, WSOU explained that it "intend[ed] to appeal the Court's determination as to claim 3." Appx8987. The district court stated that a "memorandum opinion capturing the Court's patent-eligibility analysis will be forthcoming." Appx8987.

### C. The District Court's Memorandum Opinion

On June 12, 2025, the district court issued its memorandum opinion, holding claims 1, 2, 3, 5, and 7 patent ineligible. Appx8-28. The district court observed there were "no genuine disputes over the underlying facts material to the § 101 inquiry" and granted summary judgment in Google's favor. Appx13.

***Alice Step One.*** While WSOU no longer asserted claim 1, the district court analyzed claim 1 because claims 2, 3, 5, and 7 each depend from it. The court concluded that all the claims "are directed to the abstract idea of delivering targeted content." Appx13.

The district court first recognized that this Court "has repeatedly found claims directed to presenting users with targeted content as being directed to abstract ideas." Appx17 (collecting cases). The district court explained that it was "clear from the specification and the claim language that the claimed invention is directed to the abstract idea of delivering targeted content to a subscriber." Appx17. Analyzing the claim language, the court reasoned that claim 1's "limitations merely describe implementing the invention of targeted content delivery using generic computer functions." Appx18. The court also determined that "the entire specification confirms that the claimed invention is directed to the abstract idea of collecting behavioral information about a subscriber and delivering targeted content to the subscriber based on that information." Appx17-18.

The district court held that claim 3 is also directed to an abstract idea because the claim "merely recites the concept of monitoring the access communication traffic, without specificity as to how this is accomplished." Appx20. Rejecting WSOU's argument that "the placement of the 'behavioral information collector' remote from the subscriber device supplies a non-abstract

technological advance," the court reasoned that "[n]othing in the language of Claim 3 … requires [such a] placement." Appx20-21. The court further explained WSOU's reliance on different "parts of the specification to show Claim 3's purported technical advancements" was unavailing because the Section 101 "inquiry must focus on the language of the Asserted Claims themselves—the specification cannot be used to import details from the specification if those details are not claimed." Appx21.

The district court also concluded that claims 2, 5, and 7 were directed to abstract ideas. "[T]hese claims either limit the process of collecting and analyzing information to 'a particular content' or 'a particular source' (Claim 2), expressly claim the abstract idea of targeted advertising (Claim 5), or recite generic network 'elements' (Claim 7)." Appx21.

***Alice Step Two.*** The district court held that the claims failed to recite any inventive concept. Considering claim 1's limitations individually and as an ordered combination, the court determined that the claim lacked anything "significantly more" than an abstract idea. Appx23-25. Noting the specification's statement that the claimed components "may be implemented in any various ways," the court explained that the "specification acknowledges that these components do not provide a technological improvement." Appx23.

The court further reasoned that the claimed "behavioral information collector," "behavioral analyzer," and "electronic content delivery controller" are described in result-based functional language, and the specification "predominately describes the system and methods in purely functional terms." Appx24. Because the specification "indicates that the components of Claim 1 are well-understood, routine, and conventional," the court determined there were no genuine disputes precluding summary judgment. Appx24-25.

Addressing claim 3, the court determined that the "behavioral information collector" and "DPI module" cannot supply an inventive concept. Appx25. The court noted that the specification and WSOU's expert establish that "using DPI modules to monitor and analyze packet traffic was routine, well-understood, and conventional." Appx25-26. Considering WSOU's argument that "the arrangement of the DPI module and the behavioral information collector remote from the subscriber is an inventive concept," the court held "there is no basis for this arrangement in the language of the claim; thus, it cannot supply an innovative concept." Appx26-27.

Regarding claims 2, 5, and 7, the court observed that WSOU "provide[d] no specific analysis of these claims," and concluded there was "no dispute that these claims lack an inventive concept and are patent ineligible." Appx28.

The district court then entered judgment, Appx29, and WSOU appealed.

## SUMMARY OF THE ARGUMENT

**I.** Applying the *Alice* two-step framework, the district court properly granted summary judgment that the claims of the ’806 patent are directed to patent-ineligible subject matter.

**I.A.** *Alice* Step One: The district court correctly held that the claims “are directed to the abstract idea of delivering targeted content.” Appx13. This Court has repeatedly “held claims to targeted advertising were directed to an abstract idea at *Alice* step one.” *Chewy, Inc. v. IBM Corp*., 94 F.4th 1354, 1365 (Fed. Cir. 2024). “Consistent with [this] ‘targeted advertising precedent,’” *Broadband iTV*, 113 F.4th at 1371, the claims here use result-focused functional language without explaining how any limitations improve the underlying technology.

The specification confirms that the claims cover implementing “an abstract idea for which computers are invoked merely as a tool” rather than any “physical-realm improvement to computers.” *Customedia*, 951 F.3d at 1365. The ’806 patent teaches that the claimed “components are described herein primarily in terms of their functions,” Appx72(7:3-8), and the components and interconnections “may be implemented in any of various ways,” Appx71(6:17-21).

**I.B.** *Alice* Step Two: The district court correctly held that the claim limitations—“individually and as an ordered combination”—do not “contain[] anything ‘significantly more’ than the abstract idea itself.” Appx23. Claim 1

identifies components using functional language (e.g., "behavioral information collector" and "electronic content delivery controller") and recites "implement[ing]" the components with generic "hardware." Appx76(16:29-31). Underlining the absence of any technological inventive concept, the specification directs that "the present invention ***is not limited to any particular types*** of equipment, protocols, or operation," and the "subscriber and network equipment ***are described only to the extent necessary***." Appx71(5:26-30). The claims fail *Alice* step two because, "[a]side from the abstract idea of delivering targeted advertising, the claims recite only generic computer components." *Customedia*, 951 F.3d at 1366.

Claim 3's recitation of a DPI module "to monitor" packet traffic does not transform the abstract idea into patent-eligible material. The specification acknowledges that DPI is "an ***existing*** module that is also used for such functions as traffic management." Appx71(6:39-42). And WSOU's expert testified that years before the '806 patent's filing date, "deep packet inspection systems ***were commercially available*** for monitoring network packet traffic." Appx7279(48:12-15). The district court determined this evidence "support[s] the conclusion that using DPI modules to monitor and analyze packet traffic was routine, well-understood, and conventional." Appx25-26.

**II.** None of WSOU's arguments disturb the district court's analysis. Unable to identify anything in the claims that amounts to more than an abstract idea implemented with generic computer tools, WSOU's primary argument is that claims 1 and 3 are patent eligible because the "behavioral information collector" must be remote from the subscriber device. But nothing in the claim language recites any such requirement. And the specification defeats WSOU's position by expressly teaching that the components can be "implemented in the ***same equipment***, such as ***on one computer or network device***." Appx71(6:24-25). WSOU's brief ignores this passage and other parts of the specification explaining that the "present invention is not limited to any particular type of subscriber or network equipment." Appx70(4:65-67).

The district court considered and dismissed WSOU's argument because "[n]othing in the language of Claim 3 … requires the placement of the 'behavioral information collector' remote from the subscriber." Appx21. The court also rejected WSOU's resort to the specification, explaining that "the § 101 inquiry must focus on the language of the Asserted Claims themselves—the specification cannot be used to import details from the specification if those details are not claimed." Appx21. That accords with this Court's directive that "only features that are claimed, not unclaimed details that appear in the specification, can supply something beyond ineligible matter." *GoTV*, 2026 WL 346200, at *5.

## STANDARD OF REVIEW

This Court reviews a grant of summary judgment de novo. *Broadband iTV*, 113 F.4th at 1366 (applying Fifth Circuit law). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, no genuine dispute of material fact exists. *Id.* This Court reviews patent-eligibility determinations de novo. *Id.*

## ARGUMENT

### I. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT THAT THE CLAIMS OF THE ’806 PATENT ARE INVALID UNDER SECTION 101

#### A. The Claims Are Directed To Ineligible Subject Matter

At *Alice* step one, the Court analyzes “the character of the claims as a whole to determine whether they are ‘directed to’ patent-ineligible subject matter.” *AI Visualize, Inc. v. Nuance Commc’ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024). The Court evaluates “well-settled indicators of abstractness” such as whether: (1) the claims recite specific technical improvements or focus on specific technical problems; (2) the claims are drafted in functional language; and (3) this Court has held similar claims ineligible in other cases. *Beteiro*, 104 F.4th at 1355-57; *US Pat. No. 7,679,637 LLC v. Google LLC*, 164 F.4th 1373, 1378 (Fed. Cir. 2026).

Applying these analytical tools, the district court correctly held that the claims cover the patent-ineligible concept of delivering targeted content.

#### 1. The character of the claims is directed to excluded subject matter

##### a. The claim language demonstrates that the claims are directed to an abstract idea rather than a specific technical improvement

To determine if claims are "directed to" a patent-ineligible concept, this Court considers "whether the claims focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1363 (Fed. Cir. 2021). Here, the claim language shows that claims 1 and 3 "are directed to the abstract idea of using a computer to deliver targeted advertising to a user, not to an improvement in the functioning of a computer." *Customedia*, 951 F.3d at 1362-63.

Claim 1 recites three generic components for monitoring behavior and delivering targeted content within a generic environment. First, a "behavioral ***information collector***" that "monitor[s] communication traffic" of a "subscriber." Appx76(16:2-12). Second, a "behavioral ***analyzer***" that "analyze[s]" that monitored behavior and "maintain[s] a behavioral profile of the subscriber." Appx76(16:13-23). Third, an "electronic content delivery ***controller***" that "***deliver[s] … targeted electronic content*** to the subscriber ***for presentation***" "based on the behavioral profile." Appx76(16:24-28). Rather than reciting any technical improvement, these limitations are nothing more than "generic computer

functions performed in the service of implementing targeted marketing." *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 887 (Fed. Cir. 2019).

The language here is no different than claims this Court routinely holds invalid under Section 101: "[C]laim 1 … is directed to the abstract idea of ***collecting*** and using viewing history ***data to recommend categories*** of video content…. Put another way, claim 1 ***is directed to a type of 'targeted advertising,'*** which we have repeatedly found abstract." *Broadband iTV*, 113 F.4th at 1371. As this Court has "now frequently held, ***claims reciting generalized steps of collecting, analyzing, and presenting information***, using nothing other than the conventional operations of generic computer components, are directed to abstract ideas." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1293 (Fed. Cir. 2024). The components in claim 1 do exactly that.

The remaining claim language—four "wherein" clauses—simply describes the environment for performing the abstract idea of delivering targeted content. The first "wherein" clause states that "at least one of the behavioral information collector, the behavioral analyzer, and the electronic content delivery controller is implemented using hardware." Appx76(16:29-31). Here, the claim states that the component(s) include some unspecified "hardware." "Such generic and functional hardware is insufficient to render eligible claims directed to an abstract idea." *Customedia*, 951 F.3d at 1366.

The three other "wherein" clauses limit the claim to a particular environment. The second "wherein" clause recites that an "access communication link" includes "a network link in an access network, the access network comprising an electronic content source." Appx76(16:32-36). The third "wherein" clause requires that "the electronic content source provides an Internet Protocol Television (IPTV) service." Appx76(16:37-38). The fourth "wherein" clause provides that the "electronic content delivery controller … select[s] the targeted electronic content from … multiple targeted electronic content providers." Appx76(16:39-42). Narrowing limitations that "attempt[] to limit the use of the [abstract idea] to a particular technological environment" cannot survive *Alice* step one. *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).

Nothing about claim 3 changes this analysis. Claim 3 adds that "the monitored communication traffic comprises packet traffic" and "a Deep Packet Inspection (DPI) module … operable to monitor the access communication traffic." Appx76(16:47-52). Limiting the "monitored communication traffic" to "packet traffic" cannot save claim 3. The "fact that the … claim is limited to a particular networking environment does not render the claims any less abstract." *Bridge & Post*, 778 F. App'x at 889. When, as here, "the claims' focus remains on the abstract idea," a "claim is not patent eligible merely because it applies an

abstract idea in a narrow way" or "cover[s] a narrower range … than claim 1." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1287 & n.1 (Fed. Cir. 2018).

Nor does claiming a DPI module "to monitor the access communication traffic" supply a specific technological improvement. The patent explains that using DPI to monitor traffic is conventional: "A DPI module … might be an existing module that is also used for such functions as traffic management." Appx71(6:39-42). WSOU's expert confirmed that DPI "was a known concept that [the inventors] were making use of." Appx7276(27:11-14).

Addressing limitations similar to claim 3, this Court recognizes that "intercepting network traffic amounts to nothing more than [an abstract] idea." *Bridge & Post*, 778 F. App'x at 892. The analysis in *Chewy* is also on point and decisive. This Court explained that the "claims ***are not*** directed to any challenges unique to computer networks, or specific improvements to the functionality of the computer itself. The ***claims merely recite*** the concept of ***identifying advertisements based on search results***, without any specificity as to how this is accomplished." 94 F.4th at 1366.

#### b. The claims recite functional, result-oriented language without explaining how the results are achieved

This Court holds that "claims … drafted using largely (if not entirely) result-focused functional language, containing no specificity about how the purported invention achieves those results … ***are almost always*** found to be ineligible for

patenting under Section 101." *Beteiro*, 104 F.4th at 1356. Applying this principle, the district court correctly held that claim 1 "merely describe[s] implementing the invention of targeted content delivery using generic computer functions." Appx18.

Claim 1 recites three computer elements to perform various functions without "disclos[ing] ***how*** the claimed results are achieved or embody any specific technological improvement." *US Pat.*, 164 F.4th at 1378 (original emphasis).

| **"behavioral information collector"** | **"behavioral analyzer"** | **"electronic content delivery controller"** |
|---|---|---|
| "a behavioral information collector ***operable to monitor communication traffic*** exchanged with a communication network subscriber … [and] ***being configurable to collect from any of a plurality of types of communication traffic***" Appx76(16:3-12) | "a behavioral analyzer ... ***operable to maintain a behavioral profile of the subscriber*** that reflects ongoing behavior of the subscriber … [and] ***maintenance of the behavioral profile being unaffected by behavioral information collected***" Appx76(16:13-23) | "an electronic content delivery controller … ***operable to control, based on the behavioral profile, delivery of targeted electronic content to the subscriber for presentation*** with electronic content accessed by the subscriber" Appx76(16:24-28) |

WSOU itself concedes that the "behavioral information collector" "is framed in functional language." BBr.21.

The "wherein" clauses also use functional, result-oriented language. The second clause recites an "access network comprising an electronic content source that is ***operable to deliver the accessed electronic content to the subscriber***." Appx76(16:32-36). The final clause provides "the electronic content delivery

controller is further ***operable to select the targeted electronic content from targeted electronic content***." Appx76(16:39-42). Claims that "consist solely of result-orientated, functional language and omit any specific requirements as to how the[] steps … are performed" are ineligible. *Mobile Acuity*, 110 F.4th at 1292-93.

Claim 3 also uses predominantly functional terms. As the district court correctly reasoned, the claim "merely recites the concept of monitoring the access communication traffic, without specificity as to how this is accomplished." Appx20. The claim language makes this clear: "a Deep Packet Inspection (DPI) module ***operatively coupled*** to the behavioral information collector and ***operable to monitor the access communication traffic***." Appx76(16:47-52).

The claims' pervasive use of functional language underscores that they are directed to the abstract idea of delivering targeted content.

#### 2. The specification confirms that the claims are directed to the ineligible concept of delivering targeted content

"The 'directed to' inquiry may also involve looking to the specification to understand the problem facing the inventor and, ultimately, what the patent describes as the invention." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019). Here, from start to finish, the specification demonstrates that the '806 patent is directed to the abstract idea of delivering targeted content. The patent is titled "Targeted Electronic Content Delivery Control Systems and Methods." Appx65. The first sentence of the Abstract

informs that "[t]argeted electronic content delivery systems and methods are disclosed." Appx65.

The Summary of the Invention section emphasizes that the "present invention may significantly ***improve an advertiser's return on investment*** … by delivering highly relevant targeted online advertisements." Appx69(2:37-42). In *Bridge & Post*, this Court addressed similar statements where the patent described "its solution as filling a need for 'effective and ***efficient revenue modeling*** for advertising.'" 778 F. App'x at 893. The Court explained that such statements do not "reflect[] an improvement to the performance of the computer itself. The ability to run a more efficient advertising campaign, even if novel, and even if aided by conventional computers, is an advance ***entirely in the realm of abstract ideas***." *Id.*

The '806 patent does not describe any technological improvement to the underlying technology for delivering targeted content. Instead, the specification consistently states that the disclosed system uses "familiar" and "existing" components. In the Detailed Description of Preferred Embodiments section, the patent states that the "***present invention is not limited to any particular type of subscriber or network equipment***," and skilled artisans "will be familiar with many different types of subscriber systems, access communication networks, and core communication networks." Appx70(4:62-67).

Far from disclosing improvements to the underlying technology, the '806 patent repeatedly states that no particular technology is required:

- "[M]any examples of subscriber, access network, and core network technologies and their operation will be familiar to those skilled in the art. ***Since the present invention is not limited to any particular types of equipment, protocols, or operation***, subscriber and network equipment are described only to the extent necessary to illustrate embodiments of the invention." Appx71(5:24-30).
- "[E]mbodiments of the invention ***could be implemented with further, fewer, or different components than explicitly shown***." Appx71-72(6:67-7:2).
- "Given the broad range of possible implementations of many of the components of the system 20, these ***components are described herein primarily in terms of their functions.*** Based on the functional descriptions, a person skilled in the art would be enabled ***to implement the invention in any of various ways***." Appx72(7:3-8).

As to claim 3 reciting a DPI module, the patent does not disclose any sort of "enhanced" DPI module or improved "packet-traffic" analysis. Rather, the patent states that the DPI module can "be ***an existing module*** that is also used for such functions as traffic management." Appx71(6:39-42).

These passages further confirm that the claims do not improve computer technology itself because the patent is agnostic about the underlying technology.

### 3. This Court repeatedly holds that claims directed to delivering targeted content are patent ineligible

This Court instructs that it is "sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016); *see Beteiro*, 104

F.4th at 1356 (analyzing "several precedents in which [this Court] ha[d] concluded that broadly analogous claims [were] abstract"). Adhering to this guidance, the district court observed that this Court has "repeatedly found claims directed to presenting users with targeted content as being directed to abstract ideas." Appx17. The district court's cited cases (and others) confirm that the claims here cover the abstract idea of delivering targeted content.

**[1]** *Free Stream* addressed claims "directed to: (1) gathering information about television users' viewing habits; (2) matching the information with other content (i.e., targeted advertisements) based on relevancy to the television view; and (3) sending that content to a second device." 996 F.3d at 1361-62. This Court emphasized that it had, "in other cases, noted that similar claims were directed to the abstract idea of 'targeted advertising.'" *Id.* at 1362. As in *Free Stream*, the claims here "do[] not explain how" they "improve[] the operability of [the claimed] devices beyond providing a user with targeted content using generic processes and machinery." *Id.* at 1365. At most, the "claims merely improve the abstract idea of targeted advertising." *Id.*

**[2]** In *Customedia*, this Court held that the claims recited "the abstract idea of using a computer to deliver targeted advertising to a user." 951 F.3d at 1362. The claims did not "improve the functionality of the computer itself"; instead, they

"merely improve[d] the abstract concept of delivering targeted advertising using a computer only as a tool." *Id.* at 1363. The same is true here.

**[3]** *British Telecommunications PLC v. IAC/InterActiveCorp*, 813 F. App'x 584 (Fed. Cir. 2020), held that the claims were "directed to an abstract idea: providing lists of location-specific information sources to users based on their location." *Id.* at 587. This Court emphasized that it has "previously held that ***tailoring the provision of information to a user's characteristics***, such as location, ***is an abstract idea***." *Id.* Affirming invalidity under Section 101, the Court explained that the challenged claims did "not differ materially from those we have held directed to abstract ideas." *Id.* Here, the claims also "tailor[] the provision of information to a user's characteristics," *id.*, and are likewise invalid.

**[4]** *In re Morsa*, 809 F. App'x 913 (Fed. Cir. 2020), involved claims directed to "a process that transmits a request for demographic … user information to the user and then saves the user information … to match the user to a specific advertiser." *Id.* at 917. This Court explained that "the claim ***recites … targeted advertising***," which is an "***abstract idea[] relating to customizing information*** based on the user and matching them to the advertiser." *Id.* As in *Morsa*, the claims here are directed to the same "abstract idea and fundamental economic practice of organizing human activity." *Id.*

**[5]** *Bridge & Post* presented claims "directed to the use of persistent identifiers to implement targeted marketing." 778 F. App'x at 887. This Court emphasized that "[t]argeted marketing is a form of 'tailoring information based on [provided] data,' which [this Court] ha[s] previously held is an abstract idea." *Id.* This Court observed that "[t]he concept is a 'fundamental practice' that dates back to newspaper advertisements." *Id.* The claims here are similarly directed to the abstract idea of "[t]argeted marketing" via "tailoring information based on [provided] data." *Id.*

Additional precedent further supports the district court's determination:

**[6]** In *Chewy*, this Court addressed claims that "broadly recite correlating advertisements with search results using a generic process." 94 F.4th at 1365. Noting prior decisions holding that "claims to targeted advertising were directed to an abstract idea at *Alice* step one," this Court concluded that "[c]orrelating advertisements with search results is ***a type of targeted advertising and is thus abstract***." *Id.* Here, the character of claims 1 and 3 is no different.

**[7]** In *Broadband iTV*, this Court held that claims reciting "maintaining … a usage history database" and "generating … viewer-individualized electronic program guides" are "directed to a type of 'targeted advertising,' which we have repeatedly found abstract." 113 F.4th at 1371. This Court reasoned that "determining content to recommend based on user consumption history can be

performed in the human mind or using a pencil and paper. This is another indication that the claims are abstract." *Id.* The same reasoning leads to the same result in this case.

**[8]** *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015), held that claims relating to "customizing information based on (1) information known about the user and (2) navigation data" amounted to an abstract idea. *Id.* at 1369. The Court explained: "This sort of information tailoring is a fundamental … practice long prevalent," which dates back at least to "providing different newspaper inserts based upon the location of the individual" or "television commercials … based on the time of day." *Id.* at 1369-70. This analysis applies equally here.

* * *

"Consistent with [this Court's] 'targeted advertising' precedent," *Broadband iTV*, 113 F.4th at 1371, the district court correctly determined that the claims here cover the abstract idea of delivering targeted content.

### B. The District Court Properly Determined That The Claims Lack An Inventive Concept

Under *Alice* step two, this Court assesses whether the combination of claim limitations amounts to "***significantly more*** than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 218. When "a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood

techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG*, 899 F.3d at 1290-91. A "patentee that emphasizes a claim's use of certain technology … fails at step two when the intrinsic record establishes that the technology is conventional or well known in the art." *AI Visualize*, 97 F.4th at 1380. If the "specification provides that technology [in the claim elements] existed at the time of the invention," this precludes transforming an abstract idea into something patent eligible. *Id.*

#### 1. There is no genuine dispute that claim 1 lacks an inventive concept

The '806 patent's repeated admissions that the components of claim 1—individually and in ordered combination—were well known and conventional establishes there is no genuine dispute that claim 1 lacks an inventive concept. To start, the claim language prescribes that the claimed components are implemented in generic "hardware." Appx76(16:29-31). Dispelling the notion any component or arrangement of components supplies an inventive concept, the specification teaches that the "components of the system 20 and the interconnections between these components may be implemented ***in any of various ways***. For example, each component may be implemented ***in hardware, software, firmware, or combinations thereof***." Appx71(6:17-21). The patent also instructs that "these components are described herein primarily in terms of their functions" because of "the ***broad range of possible implementations*** of many of the components."

Appx72(7:3-8). As the district court properly determined, the specification acknowledges that claim 1's "behavioral information collector," "behavioral analyzer," and "electronic content delivery controller" "do not provide a technological improvement." Appx23.

The entirety of the '806 patent repeatedly reinforces this understanding. The specification explains that the "topology" of the claimed system "***is typical of an Internet service system***, wherein an Internet Service Provider (ISP) implements switches, routers, and/or other network equipment … to provide its subscribers with access to the Internet." Appx71(5:11-16). The specification also explains that "the present invention ***is not limited to any particular types of equipment, protocols, or operation.***" Appx71(5:26-28). Rather, the "subscriber and network equipment ***are described only to the extent necessary to illustrate embodiments of the invention***." Appx71(5:28-30). The specification is explicit that "the system of FIG. 1, as well as the contents of the other drawings, are intended solely for illustrative purposes, and that the present invention is in ***no way limited to the particular example embodiments shown in the drawings and described herein.***" Appx70(4:56-61).

Confirming that the claim elements were well known and conventional, the specification consistently states that "those skilled in the art" "will be familiar" with "many examples of subscriber, access network, and core network

technologies and their operation." Appx71(5:24-27); *see, e.g.*, Appx70(4:62-67) (explaining that skilled artisans "will be familiar with many different types of subscriber systems 12, 14, access communication networks 16, and core communication networks 18"); Appx72(7:9-14) (describing components that use "databases" and "memory devices" as "***common*** in communication and processing equipment").

Addressing similar disclosures, this Court holds that "[s]uch generic and functional hardware is insufficient to render eligible claims directed to an abstract idea." *Customedia*, 951 F.3d at 1366. This Court explained: "Aside from the abstract idea of delivering targeted advertising, the claims recite only generic computer components, including a programmable receiver unit [and] a storage device…. The specification acknowledges that the storage device '***may be any storage device*** … known in the art' and the receiver unit may include '***any digital*** or analog signal receiver.'" *Id.* In *Bridge & Post*, this Court held that claims for delivering targeted content failed step two because the "specification confirms that the claimed ***hardware is conventional***: the 'network access device' ***can be "any digital device*** capable of communications over the network. And the 'device identifier may comprise' ***numerous existing persistent identifiers***." 778 F. App'x at 891. The '806 specification is substantively the same.

### 2. There is no genuine dispute that claim 3 lacks an inventive concept

Claim 3's recitation of a "DPI module" to monitor "packet traffic" does not add "significantly more" to confer patent eligibility. Identifying "packet traffic" as a type of "communication traffic" cannot supply an inventive concept. "***As a matter of law***, narrowing or reformulating an abstract idea does not add 'significantly more' to it." *BSG*, 899 F.3d at 1291.

The DPI module also cannot provide an inventive concept. At the district court, WSOU expressly disclaimed such reliance, explaining that it "never relied on DPI as an individual element to show no ineligibility." Appx8376(7:8-9). This is for good reason: The record indisputably establishes that using DPI to monitor packet traffic was well known and commercially available before the '806 patent. As the district court recognized, "the patent specification and expert testimony both support the conclusion that using DPI modules to monitor and analyze packet traffic was routine, well-understood, and conventional." Appx25-26.

The '806 patent states that a "DPI module used in behavioral information collection … might be ***an existing module*** that is also used for such functions as traffic management." Appx71(6:39-42). And the patent does not otherwise "suggest the claimed invention uses [the DPI module] in an unconventional manner." *Chewy*, 94 F.4th at 1367. Such silence in the specification "is insufficient to transform [a claim] into patent-eligible subject matter." *Id.* Instead,

as discussed above in Section I.A.2, the patent reiterates that skilled artisans "will ***be familiar with many different types*** of subscriber systems, access communication networks, and core communication networks." Appx70(4:62-65).

WSOU's expert agreed, testifying that DPI "was certainly known" and "was available" before the '806 patent. Appx7277-7278(37:22-38:9). WSOU's expert also conceded that, "as of 2004, deep packet inspection systems were commercially available for monitoring network packet traffic," Appx7279(48:12-15), as recited in claim 3. These admissions eliminate any factual dispute. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018) (admissions that the claim elements and "the functions they perform existed years before his patent" preclude factual disputes).

The record also includes prior-art reference, Ou, describing the conventional use of DPI to monitor packet traffic for providing targeted content. Appx7262-7263 (discussing Appx7310-7321). Ou discloses that an "inspection element can utilize ***common inspection technology such as deep packet inspection (DPI)*** which can analyze packet traffic … ***to assess the behavior of a target end user***." Appx7317(3:33-37). Neither WSOU nor its expert disputed Ou's teachings. Appx7281-7282(61:24-62:7) (expert admitting that he does not contest that Ou teaches the DPI module recited in claim 3); Appx7348-7353 (WSOU's brief not

disputing Ou's teachings). The prior-art Ou reference cements the district court's determination that DPI cannot provide an inventive concept. *See* Appx25-26.

Viewing claim 3's limitations as an ordered combination also does not provide an inventive concept. Claim 3 recites a system for delivering targeted content using a combination of components, including a DPI module, to monitor packet traffic. The '806 patent explains that the claimed system comprises conventional components operating according to their normal functions that can be implemented in various ways. *Supra* Sections I.A.1-2. Reciting a collection of components that perform a "generic process" does not offer anything "significantly more" than the abstract idea, and "thus do[es] not contain an inventive concept." *Chewy*, 94 F.4th at 1368.

As in *Broadband iTV*, based on a full record, the district court "correctly determined that the … claims do not include something significantly more than the abstract idea itself. The district court examined the intrinsic record and … expert testimony regarding the nature of certain features of the claim and found no genuine dispute of material fact precluded summary judgment." 113 F.4th at 1370.

* * *

The claims are directed to the abstract idea of delivering targeted content, and there is no genuine dispute that the claims fail to recite an inventive concept. The district court's grant of summary judgment should be affirmed.

## II. WSOU'S ARGUMENTS LACK MERIT

### A. WSOU's Appeal Is Limited to Claim 3

WSOU asserts "the district court erred in holding that ***all claims*** of the '806 patent are ineligible." BBr.1; *see* BBr.13-14 (referring to "the claims of the '806 patent"). But its appeal only substantively challenges the district court's holding for claims 1 and 3. WSOU styled its arguments as: "*Alice* Step One: ***Claims 1 and 3*** of the '806 Patent Are Not Directed to an Abstract Idea," and "*Alice* Step Two: ***Claims 1 and 3*** of the '806 Patent Recite an Inventive Concept." BBr.16, 24. And its background section only discusses claims 1 and 3. BBr.5-7.

Moreover, WSOU dropped its assertion of claim 1 at the district court. Appx5724 n.1; *see* Appx944 (showing claim 1 is "not asserted"). WSOU's appeal is thus limited to claim 3. WSOU recognized this below, informing the court that it "intend[ed] to appeal the Court's determination as to claim 3." Appx8987.

### B. WSOU's Appeal Hinges On A Nonexistent Claim Requirement

WSOU pins its appeal on the erroneous premise that the claims require the "behavior information collector" to be remote from the subscriber device. BBr.29-34. This argument is contrary to the intrinsic evidence, and the district court correctly rejected it because "[n]othing in the language of Claim 3 … requires [such] placement." Appx21.

### 1. The claims do not require the "behavioral information collector" to be remote from the subscriber

WSOU argues that the district court "applied an implicit construction … in derogation of the asserted claim's plain and ordinary meaning," BBr.14, because the "ordinary meaning of the behavioral information collector requires a location external to the subscriber device," BBr.30. The district court did no such thing.

The court correctly determined that "nothing in the language of Claim 3 requires" the "behavioral information collector" to be in "a location remote from the subscriber," and such an arrangement cannot supply the inventive concept. Appx26-27 (referring to analysis at Appx20-21). Applying *ChargePoint*, the district court explained that "[t]he § 101 inquiry must focus on the language of the Asserted Claims themselves," and "the specification cannot be used to import details from the specification if those details are not claimed." Appx21. As the district court properly reasoned, "any reliance on the specification in the § 101 analysis must always yield to the claim language." Appx21.

The claim language fully supports the district court's analysis. Nothing in claims 1 and 3 suggests, much less requires, that the "behavioral information collector" must be remote from the subscriber. The claims simply recite that the component "monitor[s] communication traffic exchanged with a communication network subscriber over an access communication link." Appx76(16:3-12). The claims are devoid of anything that compels the "behavioral information collector"

to be separate from the subscriber. WSOU cannot cite any language mandating such an arrangement. And this Court "cannot endorse a construction analysis that does not identify a textual reference in the actual language of the claim." *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1330-31 (Fed. Cir. 2007).

Rather than identify claim language specifying separate locations, WSOU asserts that the "behavioral information collector" "must be external to the subscriber" because the component "is required to 'monitor communication traffic exchanged with a communication network subscriber over an access communication link,'" which "can only occur external to the subscriber." BBr.30-31. WSOU argues this must be so because "[c]ommunication traffic is necessarily external to the subscriber since it must be ***exchanged*** with the subscriber." BBr.31. But WSOU fails to identify any reason why the "behavioral information collector" could not "monitor communication traffic" as part of the subscriber device. No such reason exists because, as explained below, the '806 patent teaches that the "behavioral information collector" and subscriber device can be "implemented in ***the same equipment***, such as on ***one computer or network device***." Appx71(6:24-25).

### 2. The specification refutes WSOU's argument that the "behavioral information collector" must be remote from the subscriber

Ignoring the claim language and this Court's precedent, WSOU attempts to manufacture a limitation by citing stray bits of the specification. Far from supporting WSOU's assertion that the "behavioral information collector" must "be external to the subscriber," BBr.32, the '806 patent teaches the opposite:

> ***The components*** of the system 20 ***and the interconnections between those components may be implemented in any of various ways***…. Connections between components may include local connections such as physical cables or conductors and/or logical couplings through commonly accessed variables or memory areas where ***components are implemented in the same equipment, such as on one computer or network device***.

Appx71(6:17-25). WSOU ignores this passage.

Repeatedly defeating WSOU's position, the '806 patent explains that the "present invention ***is not limited to any particular type*** of subscriber or network equipment." Appx70(4:65-67). The patent states that "[a]ny server or other processing element could also or instead ***perform the functions of several components***…. Thus, as noted above, embodiments of the invention could be implemented with further, ***fewer, or different components than explicitly shown***." Appx71-72(6:63-7:2). The patent continues: "***Given the broad range of possible implementations of many of the components*** of the system 20 … a person skilled

in the art would be ***enabled to implement the invention in any of various ways***." Appx72(7:3-9).

WSOU's own citations to the specification contradict its argument. WSOU points to passages stating that the "behavioral information collector" may be positioned "inline" or "offline" relative to the "access communication link." BBr.4-5. The '806 patent describes these embodiments using non-limiting phrases such as "***may be*** deployed 'inline'" or "***may also*** or ***instead be*** provided in an 'offline' position." Appx71(5:44-51). Permissive language like "may be (not must be)" is "merely illustrative." *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 318 F.3d 1143, 1150-51 (Fed. Cir. 2003). WSOU also fails to explain how these embodiments mandate that the "behavioral information collector" is remote from the subscriber. The patent never indicates that an "offline" position excludes the subscriber. Rather, it states that, "***[i]n the example shown***, the offline behavioral information collector 34 is operatively coupled to the SME 30, ***although other connection schemes are also possible***." Appx71(5:51-53).

WSOU's reliance on Figures 1 and 2 also undercuts its argument. BBr.32-33. Those figures are "examples of embodiments" discussed in the "detailed description of preferred embodiments." Appx70(4:32-44 (capitalization removed)). The patent states that "the system of FIG. 1, as well as the contents of the other drawings, are intended ***solely for illustrative purposes***, and that the

present invention ***is in no way limited*** to the particular example embodiments shown in the drawings." Appx70(4:57-61). WSOU ignores this passage. WSOU also avoids the patent's description of Figure 2: "It should be appreciated that the system 20 ***represents one illustrative example*** of an embodiment of the invention. Other embodiments ***may include*** fewer, further, or different components, ***with similar or different interconnections, than shown***." Appx71(6:12-16).

WSOU's reliance on the patent's statement that "[s]ubscriber systems do not require any modifications to support behavior tracking," BBr.31 (quoting Appx72(7:36-38)), fails for the same reason. WSOU ignores the immediately preceding sentence: "One advantage of ***some embodiments*** of the invention is that no changes at subscriber systems are necessary." Appx72(7:34-36). Situated in context, this citation undermines WSOU's position.

Moreover, even if the specification provided that the "behavioral information collector" being remote from the subscriber was an inventive concept (it does not), the district court explained that the Section 101 "inquiry must focus on the language of the Asserted Claims themselves—the specification cannot be used to import details from the specification if those details are not claimed." Appx21. "In these circumstances, the mismatch between the specification statements that [WSOU] points to and the breadth of claim 1 ***underscores that the focus of the claimed advance is the abstract idea and not the particular***

***configuration discussed in the specification that allegedly departs from the prior art***." *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021).

**3. WSOU's remaining arguments are erroneous**

WSOU wrongly asserts that "Google's proposed construction" of "communication traffic" somehow "confirms that the behavioral information collector must be external to the subscriber." BBr.31. That claim term and Google's construction are silent about the location of the "behavioral information collector." Appx504.

Distorting the district court's decision, WSOU claims the court "did not disagree … [that] the behavioral information collector external to the subscriber could provide an inventive concept." BBr.29. The court ***rejected*** WSOU's effort to read a limitation into the claims; ***it never endorsed*** WSOU's unfounded argument by stating it "could provide an inventive concept." *E.g.*, Appx20-21; Appx26-27.

WSOU's remand request for claim-construction proceedings is meritless. BBr.30, 36. The district court already considered and rejected the same arguments that WSOU raises on appeal. Appx20-21. Further, WSOU's arguments about the location of "behavioral information collector" based on (and unsupported by) the intrinsic evidence present an issue this Court reviews de novo.

Finally, WSOU's brief is unclear on whether it contends that the DPI module in claim 3 must also be remote from the subscriber. *E.g.*, BBr.5, 9, 11, 18, 28. In any event, that argument would fail for the same reasons just explained—nothing in claim 3 supports this reading, and the specification refutes it. Appx71(6:39-47); Appx69-70(2:65-3:3).

### C. WSOU's *Alice* Step One Arguments Fail

WSOU raises a host of arguments to escape the conclusion that the claims are directed to an abstract idea. Citing its expert report, WSOU asserts the claims are patent eligible because the "behavioral information collector" is located "outside of the user device." BBr.18. As explained in Section II.B, that claim-construction argument is wrong as a matter of law. WSOU's remaining arguments fare no better.

#### 1. The intrinsic evidence lacks any discussion of how the claimed system solves a technical problem or provides a specific technical improvement

WSOU argues that the claims are directed to "a new and inventive targeted electronic content delivery system capable of sampling subscriber communication traffic and accurately profiling subscriber behavior." BBr.16. WSOU contends that the "system samples more complete communication traffic without overtaxing the computation resources of the subscriber devices by, for example, eliminating exclusive reliance on reading and writing cookies." BBr.16-17. It also asserts that

the system "improve[s] accuracy of subscriber behavior profiling by tracking and analyzing Web activity across all portals and traffic types." BBr.17.

The common and decisive flaw in each of WSOU's arguments is that "the claims themselves do not … describe ***how*** the alleged goal[s] … [are] achieved." *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023). Nor does WSOU explain ***how*** the claim language captures this "new and inventive" system. With nothing in the claims reflecting the purported technical improvements and solutions, WSOU cobbles citations from the specification. BBr.16-18. But WSOU fails to link the cited passages to the claim language. And ***none*** of WSOU's citations supports its argument:

- Appx69(1:47-67) cited at BBr.16, 17: This passage identifies problems with "some currently available advertisement delivery mechanisms using a behavioral network." This does not explain ***how*** the claims relate to a specific technological improvement.

- Appx76(15:23-26) cited at BBr.17: This passage states that the "techniques disclosed herein do not depend on any special hardware, firmware, or software arrangements, including cookies, on the subscriber's computer." Contradicting WSOU's argument, this emphasizes that the patent does not disclose any specific technological improvement and instead relies on generic and functional hardware.

- Appx76(15:33-37; 15:40-45) cited at BBr.17: This passage states that "the techniques disclosed herein may utilize network elements that monitor all of a subscriber's traffic flow," and "a precise behavioral profile can be obtained for the purpose of matching targeted electronic content to the interests of a subscriber." This uses purely functional terms without providing any detail amounting to a specific technical improvement for delivering targeted content.

- Appx72(8:28-32) cited at BBr.18: This passage states that "a behavioral information collector could be configured to collect behavioral information from only certain types of traffic and/or to inspect monitored traffic for specific data or particular fields." This only discloses the function and result without providing any details about ***how*** to achieve the result.

WSOU asserts that claim 3 recites "a ***specific*** arrangement of components … a deep packet inspection module that is operatively coupled to the behavioral information collector and operable to monitor the access communication traffic." BBr.20. Again, WSOU does not explain ***how*** claim 3 captures a specific technical solution for delivering targeted content, nor "do the claims (or the specification) explain" ***how*** this amounts to a specific technical improvement. *Hawk*, 60 F.4th at 1357. Instead, WSOU's own citation to the specification describes using DPI in its common way: "A DPI module may allow information contained in any one or more of Layers 3 to 7 of the Open Systems Interconnection (OSI) Reference Model to be examined and analyzed." Appx71(6:44-47) (cited at BBr.20). The plain focus of claim 3 is a long-standing business task—providing targeted content—"for which a computer is used in its ordinary capacity." *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1258 (Fed. Cir. 2017).

Finally, WSOU contends that Google "oversimplif[ied] the patent" and "eras[ed] limitations present in the claims." BBr.20. The reverse is true. Google—and the district court—correctly applied this Court's precedent by

directly engaging with the claim language and specification. WSOU fails to engage in that required task.

### 2. Unable to distinguish this Court's precedent regarding targeted content, WSOU cites inapposite decisions

Like its failure to engage with the claim language, WSOU tries to avoid this Court's extensive "'targeted advertising' precedent," *Broadband iTV*, 113 F.4th at 1371. For the few cases that WSOU acknowledges, it relegates them to a footnote with the boilerplate assertion that the claims here "are distinguishable" because they "improve upon ***technological aspects of subscriber profiling*** by reciting specific technical components that solve a technical problem." BBr.19 & n.3 (WSOU's emphasis). WSOU identifies nothing to substantiate its assertion. As Sections I.A.1-3 establish, there is no basis in the intrinsic evidence on which to distinguish claims 1 and 3 from this Court's cases that "held claims to targeted advertising were directed to an abstract idea." *Chewy*, 94 F.4th at 1365.

Sidestepping decisive precedent, WSOU cites inapposite cases and plucks various quotations without explaining how they apply here. WSOU argues that "claims can be directed to improvements in computer functionality without necessarily affecting the hardware components of a computer system at all." BBr.23. True, but the critical difference is that nothing in claims 1 and 3 explains ***how*** a purported specific technical improvement or solution is achieved. Each case

cited by WSOU involved specific technological improvements embodied in the claims:

- *DDR Holdings, LLC v. Hotels.com, L.P.*: The claim "specif[ied] how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink." 773 F.3d 1245, 1258 (Fed. Cir. 2014).

- *SRI Int'l, Inc. v. Cisco Sys., Inc.*: The claims recited "a specific technique … to solve a technological problem arising in computer networks: identifying hackers or potential intruders into the network." 930 F.3d 1295, 1303 (Fed. Cir. 2019).

- *Koninklijke KPN N.V. v. Gemalto M2M GmbH*: The claims recited "a new way of generating check data that enables the detection of persistent systematic errors in data transmissions that prior art systems were previously not equipped to detect." 942 F.3d 1143, 1151 (Fed. Cir. 2019).

- *Ancora Techs., Inc. v. HTC Am., Inc.*: The claim "specifically identifie[d] how" it improves computer security in an "unexpected way: a structure containing a license record is stored in a particular, modifiable, non-volatile portion of the computer's BIOS, and the structure in that memory location is used for verification." 908 F.3d 1343, 1348-49 (Fed. Cir. 2018).

- *Data Engine Techs. LLC v. Google LLC*: The claim recited "a particular manner of navigating three-dimensional spreadsheets, implementing an improvement in electronic spreadsheet functionality." 906 F.3d 999, 1011 (Fed. Cir. 2018).

Falling well outside this category of claims, claims 1 and 3 fit within the purview of this Court's guidance "that not all claims purporting to address Internet-centric challenges are eligible for patent." *DDR*, 773 F.3d at 1258.

### D. WSOU's *Alice* Step Two Arguments Fail

WSOU does not contend that any claim element individually renders the claims patent eligible. Instead, WSOU asserts that claims 1 and 3 "recite ***ordered combinations of elements*** sufficient to 'transform the nature of the claim[s] into a patent-eligible application.'" BBr.24. WSOU offers two variants of this argument: (i) that claim 1 "provides an unconventional arrangement of a behavioral information collector in an access network remote from the subscriber"; and (ii) that "claim 3 further provides an inventive combination of elements, including the deployment of DPI alongside IPTV and the behavioral information collector and behavioral analyzer elements." BBr.24.

The district court properly rejected these arguments as not "tethered to the language of the claims." Appx26-27. Because the claims do not require the "behavioral information collector" to be "remote from" the subscriber, *supra* Section II.B, it cannot provide an inventive concept. That is why WSOU's reliance on *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016), is inapt. In *BASCOM*, this Court held that the complaint plausibly alleged that the "non-conventional and non-generic arrangement of known, conventional pieces"—"the installation of a filtering tool at a specific location, remote from the end-users"—provided an inventive concept plausibly captured by the claims. *Id.* at 1350. In sharp contrast, WSOU's ordered-

combination arguments are based on a complete record and are untethered to the claim language.

WSOU's other arguments are equally devoid of merit.

#### 1. WSOU forfeited any argument that an ordered combination in claim 1 provides an inventive concept

At the district court, WSOU did not argue that "***[c]laim 1*** provides an unconventional arrangement of a behavioral information collector in an access network remote from the subscriber." BBr.24. Its arguments on that score were limited to ***claim 3***. Appx764-768 (not arguing that an ordered combination in claim 1 provided an inventive concept); Appx5736-5738 (arguing only that an ordered combination in claim 3 provided an inventive concept); Appx6203-6205 (same); Appx7348-7353 (same). The citation WSOU provides in its appeal brief demonstrates that it only developed this argument for ***claim 3***. Appx7359 ¶ 110 ("claim 3 recites an unconventional arrangement of elements…") (cited at BBr.24). WSOU also dropped its assertion of claim 1, Appx5724 n.1, informing the district court that it "intend[ed] to appeal the Court's determination as to claim 3." Appx8987. By not advancing any argument regarding claim 1's ordered combination, WSOU forfeited such arguments.

### 2. WSOU's arguments regarding cookies fail to show an inventive concept

For *Alice* step two (and step one), WSOU asserts that the '806 patent provides an inventive concept with a system that "does not read or write cookies to … user devices." BBr.8, 17. This argument fails for multiple reasons.

First, nothing in the claim language recites that any function or result is accomplished without using cookies. Indeed, the claims nowhere exclude using cookies. Nor does WSOU cite any claim language that allegedly captures this purported inventive concept. "[F]eatures that are not claimed ***are irrelevant as to step 1 or step 2*** of the *Mayo/Alice* analysis." *Am. Axle & Mfg. v. Neapco Holdings LLC*, 967 F.3d 1285, 1293 (Fed. Cir. 2020). The district court thus rejected WSOU's argument, explaining "there is no basis for this arrangement in the language of the claim; thus, it cannot supply an innovative concept." Appx27.

Second, avoiding the claim language, WSOU relies exclusively on two sentences from the specification, neither of which precludes using cookies. BBr.27 (citing Appx76(15:20-26)). A "claim must recite something ***'significantly more'*** than the abstract idea itself." *AI Visualize*, 97 F.4th at 1379. Here, "[e]ven assuming this 'teaching' can be found, it is not included in the claims, yet it is the claims that must supply the non-abstract idea." *Mobile Acuity*, 110 F.4th at 1293.

Third, *Bridge & Post* rejects the argument that delivering targeted content without using cookies is patent eligible. There, the patentee urged that its claims

survived *Alice* step two because the invention used "persistent identifiers" and obviated the need for users' cookies. 778 F. App'x at 884-85, 891. This Court explained: "Even as an ordered combination, the limitations of claim 1 recite no more than a computer implementation of the abstract idea of using persistent identifiers to implement targeted marketing." *Id.* at 891. Here, the same reasoning leads to the same result. As the district court determined, WSOU's "argument regarding the purported cookie-less nature of the claimed targeted content delivery system is essentially that it 'functions differently than prior art targeted content delivery systems, which is insufficient.'" Appx27 (citing *Bridge & Post*).

Fourth, WSOU citing its expert report cannot create a genuine dispute. BBr.35. WSOU's expert offered a conclusory assertion that the patent describes a system "that does not read or write cookies to, or otherwise burden or rely on, user devices." Appx7289 ¶ 107. The expert admitted that he did not identify any claim language for this opinion, and his only support was a single sentence ***from the specification***. Appx7284(104:14-105:8); *see* Appx7290-91 ¶ 109 (same).

### 3. WSOU's remaining arguments about the "behavioral information collector" also fail to show an inventive concept

WSOU wrongly asserts that paragraph 110 of its expert report creates a genuine issue as to whether the arrangement of the behavioral information collector provides an inventive concept. BBr.28 (citing Appx7359 ¶ 110). That paragraph contains three conclusory sentences stating and restating the same

conclusion without any explanation or evidentiary support. "Conclusory expert assertions cannot raise triable issues of material fact on summary judgment." *Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 941 (Fed. Cir. 2013). And this testimony—which asserts, without support, that the "arrangement enables improved communication traffic sampling and lessens computation resource usage … at the user device," Appx7359 ¶ 110—"is insufficient to transform the abstract idea into a patent-eligible concept." *Chewy*, 94 F.4th at 1368. This is especially true when two of the sentences (the first and last) rely on the erroneous premise that the "behavioral information collector" is remote from the subscriber. *See* Appx7359 ¶ 110.

WSOU's reliance on *Cooperative Entertainment, Inc. v. Kollective Technology, Inc.*, 50 F.4th 127 (Fed. Cir. 2022), also fails. There, the claim "contain[ed] several alleged inventive concepts which the specification touts as specific improvements in the distribution of data compared to the prior art." *Id.* at 131. By contrast, the '806 patent is devoid of such disclosure. Indeed, the '806 patent does the opposite of "tout[ing] specific improvements." *Id.* The patent describes the claimed components "primarily in terms of their functions" because skilled artisans could "implement the invention ***in any of various ways***." Appx72(7:3-8). Thus, "[a]side from the abstract idea of delivering targeted

advertising, the claims recite only generic computer components" using functional language. *Customedia*, 951 F.3d at 1366.

#### 4. The district court correctly determined there is no genuine dispute that combining DPI and IPTV lacks an inventive concept

WSOU fails to show a genuine dispute that combining DPI and IPTV provides an inventive concept at *Alice* step two. BBr.35-36. Advancing the same argument it did below, WSOU alleges that there is "unrebutted expert testimony that combining DPI with other claim elements was not routine, conventional, or well-understood." BBr.35. But WSOU ignores the district court's reasoning that such testimony is irrelevant because it hinges on "the purported placement of the behavioral information collector remote from the subscriber device and DPI module." Appx27. The claims do not require such an arrangement. *See supra* Section II.B. The district court thus correctly explained: "[A]ll that is left is Brazos' expert's conclusion that the ordered combination is not routine, well-understood, or conventional. This conclusion is not enough to create a factual dispute." Appx28.

WSOU's argument also rests on a single sentence in its expert's report that "prior targeted electronic content delivery systems deposited cookies onto user devices and did not use behavioral information collectors or DPI modules to build behavioral profiles." Appx7358-7359 ¶ 109 (cited at BBr.35). This conclusory

sentence never mentions "IPTV." And the district court correctly recognized that WSOU's argument "is essentially that [the invention] 'functions differently than prior art targeted content delivery systems,' which is insufficient" under this Court's precedent. Appx27 (quoting *Bridge & Post*, 778 F. App'x at 892).

The record also forecloses WSOU's argument. The prior-art Ou reference discloses a system with "an ***IPTV terminal***," Appx7316(2:41-48), and an "inspection element" that "utilize[s] ***common inspection technology such as deep packet inspection (DPI)*** which can analyze packet traffic … to assess the behavior of a target end user." Appx7317(3:33-38). Tellingly, WSOU's expert never disputed that Ou discloses using a DPI module with IPTV.

Finally, to the extent WSOU's argument is something other than what it raised below, WSOU "did not make this argument to the district court, and it is forfeited." *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1286 (Fed. Cir. 2023). WSOU's brief also contains stray assertions about other arrangements of claim elements and the DPI module somehow being inventive. *E.g.*, BBr.5, 24, 28. Such undeveloped arguments are forfeited, too. *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1341 (Fed. Cir. 2006) ("In order for this [C]ourt to reach the merits of an issue on appeal, it must be adequately developed.").

## CONCLUSION

This Court should affirm the district court's judgment.

Dated: February 23, 2026

Respectfully submitted,

*<u>/s/ John R. Boulé III</u>*
Tharan Gregory Lanier
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
(650) 739-3941

I. Sasha Mayergoyz
Sachin M. Patel
JONES DAY
110 North Wacker Drive
Suite 4800
Chicago, IL 60606
(312) 269-1572

Jennifer L. Swize
Tracy A. Stitt
Edwin O. Garcia
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939

John R. Boulé III
JONES DAY
555 South Flower Street
50th Floor
Los Angeles, CA 90071
(213) 489-3939

*Counsel for Google LLC*

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Federal Circuit Rule 32(b)(1) because it contains 11,285 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Times New Roman 14-point font.

Dated: February 23, 2026

*/s/ John R. Boulé III*
John R. Boulé III
JONES DAY
555 South Flower Street
50th Floor
Los Angeles, CA 90071
(213) 489-3939

*Counsel for Google LLC*