**No. 2025-1933**

# United States Court of Appeals for the Federal Circuit

**WSOU INVESTMENTS LLC, dba Brazos Licensing and Development,**
*Plaintiff-Appellant*

v.

**GOOGLE LLC,**
*Defendant-Appellee*

Appeal from the United States District Court for the Western District of Texas,
Case No. 6:20-cv-00572-ADA

## APPELLANT WSOU INVESTMENTS LLC'S REPLY BRIEF

Joseph M. Abraham
joseph.abraham@foliolaw.com
Timothy Dewberry
timothy.dewberry@foliolaw.com
FOLIO LAW GROUP PLLC
13492 Research Blvd.
Ste. 120, No. 177
Austin, TX 78750
(737) 234-0201

Alexandra Fellowes
alexandra.fellowes@foliolaw.com
Moses Xie
moses.xie@foliolaw.com
FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109
(206) 880-1802

*Counsel for Plaintiff-Appellant*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2025-1933

**Short Case Caption** WSOU Investments LLC v. Google LLC

**Filing Party/Entity** WSOU Investments LLC

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/29/2025

Signature: /s/ Joseph M. Abraham

Name: Joseph M. Abraham

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☒ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| WSOU Investments LLC | | OT WSOU Terrier Holdings II, LLC |
| | | OCO Opportunities Master Fund, L.P. |
| | | WSOU Holdings, LLC |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

Case: 25-1933 Document: 6 Page: 3 Filed: 07/29/2025



**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☒ Additional pages attached

| | | |
|---|---|---|
| Justin Allen (Cherry Johnson Siegmund James LLC) | Steven Skelley (Folio Law Group PLLC) | Mark D. Siegmund (Cherry Johnson Siegmund James LLC) |
| Cliff Win (Folio Law Group PLLC) | C. Maclain Wells (Folio Law Group PLLC) | Gregory P. Love (Cherry Johnson Siegmund James LLC) |
| Ryan C. Johnson (Cherry Johnson Siegmund James LLC) | Craig D. Cherry (Cherry Johnson Siegmund James LLC) | Melissa S. Ruiz (Cherry Johnson Siegmund James LLC) |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☒ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**FORM 9. Certificate of Interest**

**25-1933**
**WSOU Investments LLC v. Google LLC**

**4. Legal Representatives (continued).**

Carter Arnett: Bradley D. Liddle, E. Leon Carter, Joshua J. Bennett, Linda R. Stahl, Michael C. Pomeroy, Scott W. Breedlove, Seth A. Lindner, Theresa M. Dawson, Nathan Cox

Etheridge Law Group: Brett A. Mangrum, Brian M. Koide, James L. Etheridge, Jeffrey Huang, Nathan K. Cummings, Ryan S. Loveless, Travis L. Richins

Rade LLC: Scott R. Maynard

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ vii

I. INTRODUCTION ........ 1

II. THE PLAIN AND ORDINARY MEANING OF THE CLAIMS REQUIRES THAT THE "BEHAVIORAL INFORMATION COLLECTOR" BE LOCATED EXTERNAL TO THE SUBSCRIBER DEVICE ........ 2

III. *ALICE* STEP ONE: GOOGLE DID NOT SHOW ABSTRACTNESS ....... 10

A. The Claims Are Directed to an Improvement in Computer-Related Technology, Not to an Abstract Idea ........ 10

B. Google Does Not Show that the Claims Are Directed to Targeted Content ........ 17

IV. *ALICE* STEP TWO: GOOGLE FAILED TO SHOW ABSENCE OF A GENUINE DISPUTE OVER INVENTIVE CONCEPT ........ 23

A. The Arrangement of the Behavioral Information Collector External to the Subscriber Device, at a Minimum, Creates a Genuine Dispute over Inventive Concept ........ 23

B. Google Did Not Show Absence of a Genuine Dispute Concerning Inventive Concept Based on the Inventive Arrangement of the Behavioral Information Collector ........ 25

C. Google Failed to Show No Genuine Factual Dispute Regarding the Inventive Concept in the Combination of DPI and IPTV ........ 30

V. CONCLUSION ........ 32

# TABLE OF AUTHORITIES

## Cases

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208, 134 S. Ct. 2347 (2014) .......... 23, 30

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
967 F.3d 1285 (Fed. Cir. 2020) .......... 20

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) .......... passim

*Berkheimer v. HP, Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) .......... 23, 26, 28

*Beteiro, LLC v. Draftkings Inc.*,
104 F.4th 1350 (Fed. Cir. 2024) .......... 20

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
778 F. App'x 882 (Fed. Cir. 2019) .......... 20, 23, 29

*British Telcoms. PLC v. IAC/InterActiveCorp*,
813 F. App'x 584 (Fed. Cir. 2020) .......... 22

*Broadband iTV, Inc. v. Amazon.Com, Inc.*,
113 F.4th 1359 (Fed. Cir. 2024) .......... 22, 31

*Chewy v. IBM*,
94 F.4th 1354 (Fed. Cir. 2024) .......... 21, 31

*Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*,
677 F.3d 1361 (Fed. Cir. 2012) .......... 7

*Coop. Entm't, Inc. v. Kollective Tech., Inc.*,
50 F.4th 127 (Fed. Cir. 2022) .......... 27

*Customedia Techs., LLC v. Dish Network Corp.*,
951 F.3d 1359 (Fed. Cir. 2020) .......... 21, 29

*Data Engine Techs. LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. (2018) .......... 18

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014) .................................................................. passim

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) .................................................................. 25

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) .................................................................. 17, 19

*Finjan, Inc. v. Blue Coat Sys.*,
879 F.3d 1299 (Fed. Cir. 2018) .................................................................. 13, 16

*Free Stream Media Corp. v. Alphonso Inc.*,
996 F.3d 1355 (Fed. Cir. 2021) .................................................................. 20

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
60 F.4th 1349 (Fed. Cir. 2023) .................................................................. 15

*In re Morsa*,
809 F. App'x 913 (Fed. Cir. 2020) .................................................................. 22

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) .................................................................. 23

*Interactive Gift Express, Inc. v. CompuServe Inc.*,
256 F.3d 1323 (Fed. Cir. 2001) .................................................................. 4

*Kaufman v. Microsoft Corp.*,
34 F.4th 1360 (Fed. Cir. 2022) .................................................................. 3

*Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*,
554 F.3d 1010 (Fed. Cir. 2009) .................................................................. 4, 5, 9

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
942 F.3d 1143 (Fed. Cir. 2019) .................................................................. 13, 15, 18

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,
827 F.3d 1042 (Fed. Cir. 2016) .................................................................. 20

*Rembrandt Techs, LP v. Cablevision Sys. Corp.*,
496 F. App'x 36 (Fed. Cir. 2012) .................................................................. 8

*TecSec Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020) .................................................................passim

*Thales Visionix v. US*,
850 F.3d 1343 (Fed. Cir. 2017) ..................................................................... 17

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) ....................................................................... 14

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
957 F.3d 1303 (Fed. Cir. 2020) ................................................................. 10, 17

*Wi-LAN United States v. Ericsson, Inc.*,
675 F. App'x 984 (Fed. Cir. 2007) ............................................................ 29, 31

## I. INTRODUCTION

Google's responsive brief[1] does not materially alter the core issues on appeal, nor their proper disposition.

Google's brief makes clear that its *Alice* step one and two arguments turn on an erroneous reading of "behavioral information collector," a reading that presumes the behavioral information collector can be located ***internal*** to the subscriber device. But the intrinsic evidence mandates the opposite—i.e., placement of the behavioral information collector ***external*** to the subscriber device. Once this plain and ordinary meaning is applied, Google's *Alice* arguments fall apart.

At *Alice* step one, claims 1 and 3 are directed to specific improvements to computer-related functionality, solving technological problems unique to the Internet by employing unconventional ***architecture*** and ***function*** for targeted content delivery systems that are thus capable of more efficiently and accurately tracking and profiling subscriber behavior. Google does not dispute that the patent addresses an Internet-rooted problem, nor that the improvement is computer-related. Google's arguments instead center around the claims' mention of "targeted content." But Google fails to show why the claims as a whole are directed to the abstract concept of "targeted content," rather than a specific computer-related improvement.

---

[1] Brazos will refer to its opening brief (Dkt. 13) as "BBr." and to Google's response brief (Dkt. 27) as "RBr."

At *Alice* step two, the claims recite an arrangement of elements and combinations of elements that were not well-understood, routine, or conventional. These arrangements and combinations provide significantly more than the abstract idea of targeted content because they improve upon the underlying, prior art technological system. Specifically, claim 1[2] recites the unconventional arrangement of the behavioral information collector external to the subscriber device. Google's arguments that this is not an inventive concept rest entirely on its misunderstanding that the arrangement is not in the claims. Once the Court gives force to the proper understanding of the claims, Google's arguments collapse. Otherwise, claim 3 recites the combination of a deep packet inspection (DPI) module along with other claim elements such as Internet Protocol Television (IPTV). Neither at the district court nor here does Google offer any evidence that this combination was well-understood, routine, and conventional.

## II. THE PLAIN AND ORDINARY MEANING OF THE CLAIMS REQUIRES THAT THE "BEHAVIORAL INFORMATION COLLECTOR" BE LOCATED EXTERNAL TO THE SUBSCRIBER DEVICE

All Google's *Alice* arguments hinge on the claims permitting placement of the behavioral information collector internal to, rather than only external to, the

[2] Google argues Brazos forfeited "any argument that an ordered combination in claim 1 provides an inventive concept." RBr. 47. Brazos raised this issue at the district court and continues to here because claim 3, via its dependence on claim 1, inherits all claim 1's limitations, as well as its inventive concepts.

subscriber device. But Google's reading does not reflect the claims' plain and ordinary meaning. Rather, the claim language and intrinsic evidence mandate external placement of the behavioral information collector.

First, claim 1 expressly requires the behavioral information collector to "monitor ***communication traffic*** exchanged with a communication network subscriber ***over an access communication link***" (emphases added). Google does not dispute that both the access communication link and the communication traffic directed ***to*** the subscriber are necessarily ***external to*** the subscriber. RBr. 36. A POSITA would thus understand that monitoring communication traffic over such an access communication link, both of which (i.e., traffic and link) are external to the subscriber device, would similarly be performed by the behavioral information collector externally to the subscriber device. *See* Appx7359 ¶110 ("the behavioral information collector and DPI module [is] ***remote from*** the user device.") (emphasis added).

Google responds the claim ***does not foreclose*** the possibility of placing the behavioral information collector "as part of the subscriber device." RBr. 36. But Google thus distorts the applicable legal standard. The lack of express foreclosure of every undisclosed possibility does not mean those possibilities fall within the term's proper meaning. *See Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1373 (Fed. Cir. 2022) ("while Microsoft has noted that software [is not foreclosed from] be[ing] written to include all three processes in each display mode … Microsoft did not

suggest … any reason a skilled artisan ***would find such inclusion even arguably sensible or***, therefore, ***a plausible reading*** of the claim language") (emphasis added).

Here, it is undisputed that internal placement is never disclosed, and nowhere does Google suggest, much less demonstrate, that a POSITA would find internal placement to be "a plausible reading of the claim language." *Id.* Moreover, as detailed above, because the behavioral information collector conducts its monitoring activities via an access communication link that is external to the subscriber device, Google's "construction is illogical and does not accord with the plain import of the claim language." *Interactive Gift Express, Inc. v. CompuServe Inc.*, 256 F.3d 1323, 1336 (Fed. Cir. 2001). Crucially, Google cites no evidence that the subscriber device is capable of monitoring ***its own*** communication traffic, as it would need to in Google's reading.

Second, every disclosed embodiment expressly places the behavioral information collector external to the subscriber device, confirming the understanding of external placement. *See Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010, 1018-19 (Fed. Cir. 2009) (construing "wounds" as "skin wounds" because "[a]ll of the examples described in the specification involve skin wounds," and construing otherwise "would thus expand the scope of the claims far beyond anything described in the specification"). The patent describes three locations for the behavioral information collector, ***all external to the subscriber device***: "A behavioral

information collector might be **[1]** a standalone network element that is placed in an inline position 28, 32 with the SME 3.0 in an access communication link 26 or **[2]** in an adjunct position 34, as shown, or **[3]** integrated as part of the SME 3.0." Appx71(6:32-37). Similarly, the only figure illustrating behavioral information collector location, Figure 2, likewise depicts external placement only. Appx67(FIG. 2). Brazos's expert, citing these same passages, observed that the claims require that the behavioral information collector be external to the subscriber device. Appx7359 ¶110. The patent simply does not disclose or even suggest internal placement, and a construction so encompassing "would thus expand the scope of the claims far beyond anything described in the specification." *Kinetic Concepts*, 554 F.3d at 1019.

Google misguidedly harps on the specification's use of permissive language in describing these embodiments. RBr. 38. But the specification uses the permissive "may" only to describe two options of ***external placement***—"inline" or "offline" relative to the access communication link. Appx71(5:44-51) ("A behavioral information collector may be deployed 'inline' in the access communication link 26 … or instead be provided in an 'offline' position, operatively coupled to the access communication link 26 but not itself part of that link."). But, as below, both "inline" (blue) and "offline" (red) options are still external to the subscriber device (green):




FIG. 2

Appx67(FIG. 2).

Leaving little doubt, the specification further provides, "the techniques disclosed herein are implemented ***in an access network*** such as 16," Appx71(5:30-32). Again, the "access network" (gray) is external to subscriber devices (green):




FIG. 1

Appx66(FIG. 1).

Elsewhere, the specification's detailed description of the invention repeatedly confirms that internal placement of the behavioral information collector does not fall within the claims' plain and ordinary meaning. The specification disparages techniques that rely on the subscriber device itself: "Traditional behavioral ad networks that rely on cookies being accepted and ***deposited in a subscriber's computer*** are vulnerable to subscribers disabling of cookies, thus removing the ad network's ability to track subscriber behavior." Appx76(15:20-23) (emphasis added); *see Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch.*, LLC, 677 F.3d 1361, 1372 (Fed. Cir. 2012) ("[T]he specification goes well beyond expressing the patentee's preference ... and its repeated derogatory statements about [a particular embodiment] reasonably may be viewed as a disavowal ...."). The specification further provides that "***no changes at subscriber systems*** are necessary" and that "[s]ubscriber systems ***do not require any modifications*** to support behavior tracking" (Appx72(7:35-38) (emphasis added))—i.e., placement of the behavioral information collector inside the subscriber device. *See also* Appx75(13:18-22) ("TADA ***does not require special hardware or software in any subscriber systems***. Since the subscriber's online traffic traverses the access network 24, the traffic is being monitored by the behavioral information collector 28, 32, 34.") (emphasis added).

Google argues these teachings are prefaced as "examples of embodiments" and "illustrative." RBr. 38. While true, this prefatory language gives "no indication

that the patentee … claimed a deviation from" the external placement of the behavioral information collector "set forth in Figure 2 of the specification." *Rembrandt Techs, LP v. Cablevision Sys. Corp.*, 496 F. App'x 36, 44 (Fed. Cir. 2012) (also using "illustratively" in describing Figure 2). This is especially true because, as actually disclosed in the '806 Patent, "every contemplated embodiment flows from" the external placement of the behavioral information collector. *Id.*

Google's citations to scattered portions of the specification are unhelpful. In one cited passage, the patent teaches "[t]he components of the system 20 … may be implemented in any of various ways." RBr. 37 (quoting Appx 71(6:17-19)). But in the very next sentence, which Google omits, the patent simply explains that "each component may be implemented in hardware, software, firmware, or combinations thereof." Appx71(6:19-21). The patent then teaches that "[c]onnections between components may include local connections such as physical cables or conductors and/or logical couplings through commonly accessed variables or memory areas where components are implemented in the same equipment, such as on one computer or network device." Appx71(6:21-28). This describes components with "local connections such as physical cables or conductors," which may be "implemented in the same equipment." Critically, Google cites ***no*** evidence that the behavioral information collector is locally connected to the subscriber device via physical cables or conductors such that two "may be implemented in the same equipment."

Google's remaining citations to the specification reference descriptions of implementation optionality and do not address the location of the behavioral information collector. RBr. 37-38. In the cited passages, the patent teaches that the "present invention is not limited to any particular type of subscriber or network equipment" (*id.* 37 (quoting Appx70(4:65-67))) and that "[g]iven the broad range of possible implementations of many of the components of the system 20 … a person skilled in the art would be enabled to implement the invention in any of various ways." *Id.* 37-38 (quoting Appx72(7:3-9)). But these generic descriptions of optionality say nothing about the behavioral information collector's location vis-à-vis the subscriber device, and give no reason to "expand the scope of the claims far beyond anything described in the specification." *Kinetic Concepts*, 554 F.3d at 1019.

Expert testimony confirms the plain and ordinary meaning requires external placement. Brazos's expert Dr. Mangione-Smith opined, "claim 3 recites an unconventional arrangement of elements with the behavioral information collector and DPI module being ***remote from*** the user device." Appx7359 ¶110. Google's expert Dr. Houh never expressed a contrary opinion—i.e., that internal placement falls within the plain and ordinary meaning.[3]

[3] Although not the subject of motion briefing below and thus not technically of record on this appeal, in each of Dr. Houh's invalidity grounds, he mapped only structures external to the subscriber to the behavioral information collector: Ou's "inspection element 103," Julia's "profile engine 140," and Zito's "back-end system 180," all of which reside external to the subscriber.

The district court's *Alice* step two finding, and Google's arguments as to both *Alice* steps, turn on reading the claims to permit placing the behavioral information collector internal to the subscriber device, with the district court holding that "nothing in the language of Claim 3 requires a location remote from the subscriber." Appx27. As detailed above, this understanding of the claim language was incorrect. The summary judgment resting on this misunderstanding should be reversed.

## III. *ALICE* STEP ONE: GOOGLE DID NOT SHOW ABSTRACTNESS

### A. The Claims Are Directed to an Improvement in Computer-Related Technology, Not to an Abstract Idea

Claims 1 and 3 are directed to specific improvements to computer-related technology. That improvement lies in the specific, unconventional architecture and function of targeted content delivery systems that, as a result, are capable of more accurately and efficiently tracking and profiling subscriber behavior. This Court has "found claims directed to such eligible matter in a number of cases where we have made two inquiries of significance here: whether the focus of the claimed advance is on a solution to 'a problem specifically arising in the realm of computer networks' or computers ... and whether the claim is properly characterized as identifying a 'specific' improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function." *TecSec Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020) (quoting *DDR Holdings*, 773 F.3d at 1257-58; *Uniloc v. LG Elecs. USA, Inc.*, 957 F.3d at 1306, 1308-09). That is this case.

First, the claims address "'a problem specifically arising in the realm of computer networks' or computers." *TecSec*, 978 F.3d at 1293. The patent's "Field of Invention" discussion indicates that it relates to computers and networks: "This invention relates generally to communications and, in particular, to control of ***electronic content delivery to subscribers in communication networks*** based on subscriber behaviors." Appx69(1:7-10) (emphasis added). The specification then describes problems associated with the prior art's tracking of online activity:

- "[S]earch context-based advertisement delivery mechanisms do not capture the ongoing buying intent and/or other personal interests of a user." *Id.* 1:36-39.
- "One problem with this type of behavioral ad network lies in the limited extent of such a network, which can lead to difficulties in tracking users … [and] further tracking problems can arise when users disable cookies." *Id.* 1:56-67.

The patent makes clear it is directed to solving these technological challenges. *Id.* 2:31-33 ("there remains a need for improved targeted electronic content delivery control techniques."). While these challenges relate in some sense to a business challenge of user tracking and delivering targeted content, "it is a challenge particular to the Internet," as only the Internet finally allowed a content provider access to a sufficiently broad array of user traffic, and behavioral information derived therefrom.

*DDR Holdings,* 773 F.3d at 1257. The "particular" challenge here arises out of difficulties in tracking a user's Internet activity by a third party, which required special mechanisms like web portals, web beacons, or cookies. Appx69(1:47-52). This challenge only exists in the Internet context.

Second, the claim is "properly characterized as identifying a 'specific' improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function." *TecSec*, 978 F.3d at 1293. Claims 1 and 3 recite specific architecture of specific computer and network components. These claims recite "a behavioral information collector operable to monitor communication traffic exchanged with a communication network subscriber over an access communication link … wherein the access communication link comprises a network link in an access network," Appx76(16:2-42, 16:47-49), thus requiring a specific function and arrangement of the behavioral information collector component. The same is true of the "behavioral analyzer" and the "electronic delivery controller," which specify concrete functions and operative couplings to other claimed components. These specific components ensure "the invention is not claiming the idea of [targeted content] simply applied to the Internet." *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016).

The resulting system is capable of tracking subscriber online activity via communication traffic—which the prior art could not do—and thereby improves

subscriber profiling. Accordingly, the claim is "directed to a 'non-abstract improvement' over the prior art because it employed 'a new kind of [online tracking component] that enabled a [content delivery] system to do things it could not do before'" —i.e., track and profile subscribers using their communication traffic. *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150-51 (Fed. Cir. 2019) (quoting *Finjan, Inc. v. Blue Coat Sys.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018)). This enables the technological benefit of avoiding the use of cookies, which the patent disparages. Appx69(1:65-67).

Some of this appears undisputed. Google does not dispute that the claims address an Internet-rooted problem, but asserts without explanation that "claims 1 and 3 fit within the purview of this Court's guidance 'that not all claims purporting to address Internet-centric challenges are eligible for patent.'" RBr. 45 (quoting *DDR*, 773 F.3d at 1258). This Court in *DDR* distinguished between two categories of Internet-related claims falling on opposing sides of abstractness line. On the one hand, the Court identified "claims [that] merely recite the abstract idea of 'offering media content in exchange for viewing an advertisement,' along with 'routine additional steps such as updating an activity log, requiring a request from the consumer to view the ad, restrictions on public access, and use of the Internet.'" *Id.* at 1258 (internal citation omitted). But on the other, the *DDR* Court found the at-issue claims "do not broadly and generically claim 'use of the Internet' to perform an abstract business

practice (with insignificant added activity)." *Id.* (distinguishing *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014)). Similarly, the claims at issue here do not merely perform an abstract business process of delivering electronic content with the requirement of using the Internet; rather, the claims here ***alter the architecture of the existing content delivery system network*** to solve an Internet-rooted problem. Thus, "[u]nlike the claims in *Ultramercial*, the claims at issue here specify how [a specific content delivery system architecture involving] the Internet [is] manipulated to yield a desired result—a result that overrides the routine and conventional [user tracking and profiling techniques]." *DDR Holdings*, 773 F.3d at 1258.

Google also does not dispute that improving subscriber profiling for electronic content delivery could in principle constitute a computer-related improvement. Google argues instead that Brazos does not "explain ***how*** the claim language captures this 'new and inventive' system." RBr. 42 (original emphasis). On summary judgment, it is of course ***Google's*** burden to demonstrate ineligibility—and why the claims do not capture the computer-related improvement. But as discussed above, they do—i.e., the claimed improved architecture and resulting functionality is captured in the external behavioral information collector's ability to monitor communication traffic traversing an access communication link. The claimed architecture and functionality enable the claimed system to provide more accurate and efficient subscriber tracking and profiling.

The patent challenger in *Koninklijke* made an argument similar to Google's: that the improved way check data is generated "is not adequately captured in the claims because the claims fail to tie the permutated data with the generation of new check data." 942 F.3d at 1151. Disagreeing, this Court explained that "contrary to Appellee's proposed reading, claim 1 logically requires that original data be varied by permutation before being supplied to the generating device as 'varied data.'" *Id.* at 1151-52. Similarly here, the behavioral information collector's monitoring of subscriber communication traffic "logically requires" more complete user tracking and profiling.

Otherwise, Google's argument that "the claims themselves do not … describe how the alleged goal[s] … [are] achieved" ignores the claim language. RBr. 42 (quoting *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023). The claims require a behavioral information collector that is "operable to monitor communication traffic exchanged with a communication network subscriber over an access communication link," which ties the claim to improved functionality of user tracking ***through communication traffic***. Google ignores this important aspect of the claim. *See TecSec*, 978 F.3d at 1296 ("Adobe has not persuaded us that the claims fail to [provide a specific solution], because its arguments ***ignore what plainly are important aspects*** of the claims and the focus of the claimed advance in the combination.") (emphasis added).

Additionally, Google does not explain why the level of specificity in the claims as drafted is insufficient to "describe how the alleged goal[s] … [are] achieved." RBr. 42. To the extent Google suggests additional implementation details are necessary to constitute a "specific" computer-related improvement, Google is incorrect. *See Finjan,* 879 F.3d at 1304-06 ("There is no need to set forth a further inventive concept for ***implementing the invention***") (emphasis added).

Google does not contend the patent merely claims a "desired result." *TecSec*, 978 F.3d at 1293 (Fed. Cir. 2020) (inquiring at *Alice* step one "whether the claim is properly characterized as identifying a 'specific' improvement in computer capabilities or network functionality, rather than ***only claiming a desirable result*** or function.") (emphasis added); *see generally* RBr. 15-27, 41-45. This is for good reason, as the claims do not recite the results of improved user tracking and subscriber profiling, but rather the specific architecture and functionality for achieving them. *See Finjan*, 879 F.3d at 1304-06 ("there is no contention that the only thing disclosed is the result and not an inventive arrangement for accomplishing the result …. The idea is non-abstract.").

Google's argument that technological benefit of cookie-less subscriber tracking and profiling is not recited in the claims is unavailing. RBr. 48. This technological benefit is the natural and necessary result of performing the claim: subscriber tracking and profiling by monitoring communication traffic using a behavioral

information collector external to the subscriber device dispenses with any need to use cookies. As this Court has made clear, "[c]laims ***need not articulate the advantages*** of the claimed combinations to be eligible." *Uniloc*, 957 F.3d at 1309 (emphasis added).

### B. Google Does Not Show that the Claims Are Directed to Targeted Content

Unable to refute that the claims are directed to a specific computer-related improvement, Google mischaracterizes the claims as directed to targeted content. RBr. 16-19. In doing so, Google ignores important aspects of the claims and draws crude analogies to targeted content cases.

There is no dispute that claims 1 and 3 ***involve*** targeted content. But the *Alice* step one inquiry does not "simply ask whether the claims ***involve*** a patent-ineligible concept. … Rather, the 'directed to' inquiry applies a stage one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'" *Enfish,* 822 F.3d at 1335 (emphasis in original; internal citation omitted); *see also Thales Visionix v. US*, 850 F.3d 1343, 1349 (Fed. Cir. 2017). Contrary to Google's suggestion, there is no rule that claims that merely ***mention*** targeted content are *per se* abstract. *See DDR,* 773 F.3d 1245. In *DDR*, non-abstract claims recited "one active link associated with a commerce object associated with a buying opportunity of a selected one of a plurality of merchants" and "information associated with the commerce object associated with the link that has been

activated"—i.e., ***advertisement*** information. *Id.* at 1249-50. This Court rejected the assertion that the claims were focused on a business practice, finding that the claims "do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.* at 1257.

Applying this controlling precedent, the '806 Patent claims are properly understood to be directed not to targeted content, but to an ***improvement in existing technological systems for delivering such content***. The fact that targeted content itself may be, in a sense, "abstract," does not mean that physical, technological systems for delivering such content are also abstract, any more than improvements in spreadsheet functionality or data error detection technology are abstract simply because the output of those technological systems may be considered abstract. *See Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. (2018) (spreadsheet); *Koninklijke*, 942 F.3d at 1151 (error detection). The claims "do not merely recite the performance of [targeted content delivery] along with the requirement to perform it on the Internet." *DDR*, 773 F.3d at 1257. Rather, "the claimed solution is necessarily rooted in [Internet] technology in order to overcome a [online tracking and user profiling] problem specifically arising in the realm of computer networks." *Id.*

Reinforcing this non-abstract focus, of claim 1's seven limitations (and claim 3's eight), only two mention targeted content. Appx76(16:2-42, 16:47-49). The remaining limitations detail the structure and function of components for achieving improved user tracking and profiling. As a result, targeted content is ancillary to this improvement in computer capability. The specification affirms the focus on the computer-related improvement and repeatedly frames the invention as improving relevant technology. Appx72(7:35-38, 13:18-22). Importantly, the specification talks about advertising platforms only as a potential beneficiary of the disclosed technology rather than as its focus. Appx69(2:36-42) ("Embodiments of the present invention may significantly improve an advertiser's return on investment of its advertising expenditures"). Here, "considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter,'" *Enfish*, 822 F.3d 1335 (citation omitted), the claims as a whole are not directed to targeted advertising.

Brushing off this Court's direction, Google refuses to analyze the claims' "character as a whole." *Id.* Rather, Google breaks the claims into component pieces and concludes they are "generic components for monitoring behavior and delivering targeted content within a generic environment." RBr. 16-17. Google's analysis involves selectively quoting from the claims and highlighting language it deems generic, before concluding "these limitations are nothing more than 'generic computer functions performed in the service of implementing targeted marketing.'" *Id.*

(quoting *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 887 (Fed. Cir. 2019)). Google's approach amounts to cherry-picking words from the claims and identifying them as ineligible concepts without any explanation why the claims as a whole are directed to those supposed concepts. *See Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 ("it is not enough to merely identify a patent-ineligible concept underlying the claim; we must determine whether that patent-ineligible concept is what the claim is 'directed to.'").

Unable to demonstrate that the claims focus on targeted content, Google argues the claims are "drafted using largely (if not entirely) result-focused functional language, containing no specificity about how the purported invention achieves those results." RBr. 19 (quoting *Beteiro,* 104 F.4th at 1356). Other than selectively quoting and highlighting portions of the claims it deems functionally described, Google does not explain why this is so. *See id.* "All that is required at the eligibility phase is that the claim itself 'must identify 'how' that functional result is achieved by limiting the claim scope to structures specified at ***some level of concreteness***.'" *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1363 (Fed. Cir. 2021) (quoting *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1302 (Fed. Cir. 2020)) (emphasis added).

The '806 Patent's claims do this. The claims limit their scope to behavioral information collectors that "monitor communication traffic exchanged with a

communication network subscriber over an access communication link," where "the access communication link enabl[es] the subscriber to access electronic content." A wherein clause further limits claim scope to concrete structures, requiring "the access communication link comprises a network link in an access network," as does claim 3's requirement of "a Deep Packet Inspection (DPI) module operatively coupled to the behavioral information collector and operable to monitor the access communication traffic." Moreover, properly understood, the behavioral information collector is required to have a specific location external to the subscriber device. Google fails to explain why this is insufficiently specific.

Finally, Google invokes targeted content cases simply because the claims here also involve targeted content. But those cases dealt with claims that recited targeted content ***and only*** targeted content. None recited a computer-related improvement. The claims here recite targeted content ***and*** a specific computer-related improvement that solves an Internet-rooted problem ***and*** focus on the latter. In each of *Customedia*, *Chewy*, and *Broadband iTV*, the Court found that the at-issue claims at best improved upon the abstract idea itself, without providing an improvement to computer functionality. *See Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1363 (Fed. Cir. 2020) (the "claimed invention merely improves the abstract concept of delivering targeted advertising using a computer only as a tool"); *Chewy v. IBM*, 94 F.4th 1354, 1365 (Fed. Cir. 2024) (same); *Broadband iTV, Inc. v.*

*Amazon.Com, Inc.*, 113 F.4th 1359, 1371-72 (Fed. Cir. 2024) ("The reduction in keypresses is achieved through the recited targeted advertising method. And that method is abstract."). The inverse is true here. The '806 Patent's claims recite an improvement to computer capabilities in the context of an Internet-rooted problem. The claims do not recite or require an improvement to targeted content and any such improvement is simply the product of the improvement to computer capabilities.

Google's remaining cases are similarly distinguishable:

- *Free Stream Media*, 996 F.3d at 1364 ("the asserted claims nonetheless do not recite an improvement in computer functionality."); *British Telcoms. PLC v. IAC/InterActiveCorp*, 813 F. App'x 584, 587 (Fed. Cir. 2020) (the "claims are not directed to any improvement in how a computer or communication network functions but merely use computers as tools to implement an independently abstract idea"). The '806 Patent's claims recite and are focused on improved computer and network architecture and functionality.
- *In re Morsa*, 809 F. App'x 913, 917 (Fed. Cir. 2020) (the claim "is directed to the abstract idea and fundamental economic practice of organizing human activity"). The '806 Patent's claimed architecture and functionality do not attempt to organize human activity.

- *Bridge & Post*, 778 F. App'x at 889 ("None of these alleged improvements 'enables a computer ... to do things it could not do before.'"). The '806 Patent claims enables a computer to track online activity and perform subscriber profiling in a manner it could not before.
- *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1371 (Fed. Cir. 2015) ("The patent claims here do not address problems unique to the Internet"). The '806 Patent claims address the problem of tracking online activity, which is unique to the Internet.

## IV. *ALICE* STEP TWO: GOOGLE FAILED TO SHOW ABSENCE OF A GENUINE DISPUTE OVER INVENTIVE CONCEPT

### A. The Arrangement of the Behavioral Information Collector External to the Subscriber Device, at a Minimum, Creates a Genuine Dispute over Inventive Concept

As set forth in Brazos's Opening Brief, claim 1 and 3's arrangement of the behavioral information collector—i.e., in an access network and external to the subscriber device—was not well-understood, routine, and conventional. *See Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The claimed arrangement provides significantly more than the alleged abstract idea of targeted content itself, because targeted content is applied to an improvement to the architecture of content delivery systems, resulting in improved user tracking and profiling. Accordingly, the "claims may be read to 'improve[] an existing technological [system].'" *BASCOM*, 827 F.3d at 1351 (citing *Alice*, 573 U.S. at 223).

As in *BASCOM*, where this Court found "the patent describes how its particular arrangement of elements is a technical improvement over prior art ways of filtering such content," (827 F.3d at 1350) the patent here describes a particular arrangement of the behavioral information collector that is a technical improvement over prior art content delivery systems. This Court acknowledged in *BASCOM* that "prior art filters were either susceptible to hacking and dependent on local hardware and software, or confined to an inflexible one-size-fits-all scheme," and that "the inventors recognized there could be a filter implementation versatile enough that it could be adapted to many different users' preferences while also installed remotely in a single location." *Id.* Similarly, the inventors here recognized shortcomings of prior art content delivery system architectures, which relied on the subscriber device, and envisioned an implementation that did not so rely—i.e., by placing a behavioral information collector external to the subscriber device.

Other indicia considered at *Alice* step two confirm the inventive arrangement here amounts to significantly more than an abstract idea. The claims "do not merely recite the abstract idea of [delivering targeted] content along with the requirement to perform it on the Internet, or to perform it on a set of generic computer components." *Id.* at 1350. Instead, the claims specify a non-generic arrangement of components that improves upon an Internet-rooted technology. The claims do not merely invoke" computers and networks that are not even arguably inventive[, which] are

'insufficient to pass the test of an inventive concept in the application' of an abstract idea." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016). The claims here require an inventive behavioral information collector component, which properly understood must bet external to the subscriber device.

### B. Google Did Not Show Absence of a Genuine Dispute Concerning Inventive Concept Based on the Inventive Arrangement of the Behavioral Information Collector

Google's *Alice* step two arguments against the inventive arrangement hinge on its misunderstanding of the plain and ordinary meaning of the claims. It argues that "[n]othing in claims 1 and 3 suggests, much less requires, that the 'behavioral information collector' must be remote from the subscriber." RBr. 35. But as shown above, the plain and ordinary meaning of the claims,  as mandated by both the claim language and specification, requires placement external to the subscriber device. Once this plain and ordinary meaning is given force, Google's arguments collapse.

Google does not dispute that the arrangement of the behavioral information collector external to the subscriber device was unconventional. *See generally* RBr. 27-33, 46-51. Nor could it. Neither at summary judgment nor here did Google cite evidence that the arrangement of the behavioral information collector was well-understood, routine, and conventional. *Id.*; *see generally* Appx7261-7269. On the other hand, Brazos cited unrebutted expert testimony that, applying the claims' plain and ordinary meaning, "claim 3 recites an unconventional arrangement of elements with

the behavioral information collector and DPI module being remote from the user device." Appx7359 ¶110. Brazos's expert further tied the unconventional arrangement to inventiveness of the claim: "[t]his unconventional arrangement enables improved communication traffic sampling and lessens computational resource usage … at the user device." *Id.* Google's expert never addressed this inventive arrangement, much less offered the required clear and convincing evidence that it was well-understood, routine, and conventional. *See generally* Appx7406-7417.

Both at summary judgment and here, Brazos cited affirmative evidence from the specification confirming the unconventional nature of the behavioral information collector's arrangement—e.g., disparaging conventional techniques requiring processes internal to the subscriber device, such as cookies: "Traditional behavioral ad networks that rely on cookies being accepted and deposited in a subscriber's computer are vulnerable to subscribers disabling of cookies, thus removing the ad network's ability to track subscriber behavior." Appx76(15:20-23). Improving upon these conventional techniques, the specification explains that "[t]he techniques disclosed herein do not depend on any special hardware, firmware, or software arrangements, including cookies, on the subscriber's computer." *Id.* 15:23-26. These specification passages attest to the fact that the disclosed techniques changed the location of subscriber profiling away from the subscriber in an unconventional manner, sufficient to defeat summary judgment. *See Berkheimer*, 881 F.3d at 1370 ("summary

judgment was improper, given the fact questions created by the specification's disclosure"); *see also Coop. Entm't, Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 133 (Fed. Cir. 2022) ("the '452 patent's written description creates a plausible factual issue regarding the inventiveness of the dynamic P2P configuration of claim").

Google has no response to these facts, and instead responds by quoting irrelevant passages from the specification that do not address the conventionality of the behavioral information collector's arrangement. For example, Google quotes the specification's teachings that "components of the system 20 and the interconnections between these components may be implemented in any of various ways. For example, each component may be implemented in hardware, software, firmware, or combinations thereof," RBr. 28 (citing Appx71(6:17-21)), and that "[g]iven the broad range of possible implementations of many of the components of the system 20, these components are described herein primarily in terms of their functions." *Id.* (citing Appx72(7:3-8)). But these passages simply describe certain implementation options that fall ***within*** the scope of the claimed invention, not that the foundational arrangement of the behavioral information collector itself was optional or conventional.

Google's remaining arguments likewise fail. Google quotes the specification's teaching that certain components such as the "subscriber," "access network," "core network," "databases," and "memory devices" were familiar. RBr. 29-30. The

conventionality of these components (many not even claimed) says nothing about the conventionality of the behavioral information collector, much less that of the arrangement of the components. Even if Google cited evidence that the behavioral information collector itself was conventional, and it did not, that alone could not carry its burden on summary judgment. *See, BASCOM*, 827 F.3d at 1350 ("The inventive concept inquiry ***requires more than recognizing that each claim element***, by itself, ***was known*** in the art. As is the case here, an inventive concept can be found in the non-conventional and ***non-generic arrangement of known, conventional pieces***.") (emphasis added). Google has advanced no evidence, either here or at summary judgment, that the claimed arrangement was well-understood, routine, or conventional.

The district court erred resolving this factual issue. *See Berkheimer*, 881 F.3d at 1370 ("Whether claims 4-7 perform well-understood, routine, and conventional activities to a skilled artisan is a genuine issue of material fact making summary judgment inappropriate with respect to these claims."). The district court had before it unrebutted expert testimony indicating an unconventional arrangement. Appx7359 ¶110. The district court also had competing citations to the specification describing individually conventional components on the one hand, and evidence indicating an unconventional arrangement on the other. *Compare* Appx7261-7265 (Google's arguments that the behavioral information collector and DPI were individually

conventional) *with* Appx7349 (Brazos's evidence that the arrangement of the behavioral information collector was unconventional). The district court improperly weighed this evidence before finding no inventive concept. *See Wi-LAN United States v. Ericsson, Inc.*, 675 F. App'x 984, 995-996 (Fed. Cir. 2007) ("The District Court erred in entering summary judgment because it ignored conflicting evidence in the record and placed greater weight on Ericsson's evidence.").

Further ignoring the claims' inventive arrangement, Google again cites the inapposite cases distinguished above with respect to *Alice* step one. *See* RBr. 30 (citing *Customedia*, 951 F.3d 1359; *Bridge & Post*, 778 F. App'x at 882). The claim in *Customedia* recited a server-client system arranged in a conventional manner: "a remote account transaction server" and "a programmable local receiver unit for interfacing with the remote account transaction server." 951 F.3d 1361. This Court, acknowledging specification teachings that the claimed components were "known in the art," concluded that "[s]uch generic and functional hardware is insufficient to render eligible claims directed to an abstract idea." *Id.* at 1366. Similarly, the relevant claims in *Bridge & Post* likewise recited conventional arrangements. 778 F. App'x at 886-87 (method steps in conventional arrangement). This Court agreed with the district court's finding that "the patent ... does not invent a sufficiently new, non-conventional arrangement of known pieces to overcome a technical challenge." *Id.* at 891 (citation omitted). In stark contrast here, the claims provide a system with

an unconventional arrangement of the behavioral information collector external to the subscriber device, which overcomes a technical challenge.

### C. Google Failed to Show No Genuine Factual Dispute Regarding the Inventive Concept in the Combination of DPI and IPTV

The combination of DPI and IPTV was not well-understood, routine, and conventional. This combination of elements provides significantly more than the alleged abstract idea of targeted content itself. The inventive combination improves upon the architecture of content delivery systems by specifying a particular computer component used in conjunction with IPTV content. Accordingly, the "claims may be read to 'improve[] an existing technological [system].'" *BASCOM*, 827 F.3d at 1351 (citing *Alice*, 573 U.S. at 223).

At summary judgment, Brazos cited unrebutted expert testimony that using DPI in the context of the claim was "not routine, convention[al], or well-understood in the field of the invention" and that "prior targeted electronic content delivery systems deposited cookies onto user devices and did not use … DPI modules to build behavioral profiles." Appx7358-7359 ¶109. Google offered no competing evidence as to the combination. *See generally* Appx7261-69. Instead, Google argued the elements individually: "A DPI module is nothing more than a well-known 'generic computer element.'" The district court erred by weighing evidence, crediting

Google's evidence as to the individual elements and not Brazos's evidence as to the ordered combination. *Wi-LAN*, 675 F. App'x at 995-96.

Google repeats those same arguments regarding individual elements. Google argues that "[t]he record indisputably establishes that using DPI to monitor packet traffic was well known and commercially available before the '806 patent." RBr. 31. But "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *BASCOM*, 827 F.3d at 1350. The record establishes that using DPI in the context of IPTV was not well-understood, routine, or conventional. Appx7358-7359.

Purporting to address "claim 3's limitations as an ordered combination," (RBr. 33), Google simply has no evidence that the combination of DPI with IPTV was well-understood, routine, or conventional. Instead, Google argues that "[t]he '806 patent explains that the claimed system comprises conventional components operating according to their normal functions that can be implemented in various ways." *Id.* But DPI in the claimed context is not operating according to its normal function, but in the unconventional context of subscriber tracking and profiling for electronic content delivery. This combination of DPI with other claim elements, including IPTV, to improve content delivery technology, distinguishes it from Google's *Broadband iTV* and *Chewy* cases, where the claims did not purport to recite any inventive arrangement of elements. *See* 113 F.4th at 1370-71; 94 F.4th at 1368.

## V. CONCLUSION

Brazos respectfully requests that this Court reverse the district court's judgment of patent ineligibility under Section 101.

Dated: April 6, 2026

Respectfully submitted,

*/s/ Joseph M. Abraham*
Joseph M. Abraham
joseph.abraham@foliolaw.com
Timothy Dewberry
timothy.dewberry@foliolaw.com
FOLIO LAW GROUP PLLC
13492 Research Blvd.
Ste. 120, No. 177
Austin, TX 78750
(737) 234-0201

Alexandra Fellowes
alexandra.fellowes@foliolaw.com
Moses Xie
moses.xie@foliolaw.com
FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109
(206) 880-1802

*Counsel for Appellant*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2025-1933

**Short Case Caption:** WSOU Investments LLC v. Google LLC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 6,938 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ___________ lines of text.
- [ ] the filing contains ___________ pages / ___________ words / ___________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ___________).

Date: 04/06/2026

Signature: /s/ Joseph M. Abraham

Name: Joseph M. Abraham